239 F.2d 510
 GENERAL HOUSES, Inc., Plaintiff-Appellant,
v.
MARLOCH MANUFACTURING CORPORATION, The Greenport Basin and
Construction Company, and Marshall E. Tulloch,
Defendants-Respondents, and The
Reconstruction Finance
Corporation, Defendant.
 No. 153, Docket 24260.
 United States Court of Appeals Second Circuit.
 Argued Nov. 9, 1956.
Decided Dec. 26, 1956.
 
 Bokat & Bokat, New York City, for plaintiff-appellant.
 Weil, Gotshal & Manges, New York City (Gabriel Kaslow, Ira M. Millstein and Stephen A. Wise, New York City, of counsel on the brief), for defendants-respondents.
 Before HAND, MEDINA and LUMBARD, Circuit Judge.
 LUMBARD, Circuit Judge.
 
 
 1
 The action before us, in which jurisdiction rests on diversity of citizenship as to the defendant-respondents and on federal question jurisdiction as to the other defendant, 50 U.S.C.Appendix, §§ 1821, 1832, U.S.Code Cong.Service 1946, pp. 199, 206, is for breach of contract, for inducing a breach of contract, and for a declaratory judgment as to the present validity of a security assignment by the plaintiff to one of the defendants before us. The defendant-respondents sought to examine plaintiff's 'President or other officer * * * having knowledge of the facts' under Rule 30(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Upon plaintiff's failure to produce in accordance with the demand, the District Court dismissed its complaint with prejudice as to the defendant-respondents under Rule 37(d), subsequently entering a final order under Rule 54(b) upon a finding of no just cause for delay.
 
 
 2
 In 1947 General Houses, Inc., incorporated in Delaware, contracted with the Reconstruction Finance Corporation for the R.F.C. to guarantee the sale of 2,000 prefabricated houses to be constructed by General Houses and sold to the general public. General Houses then subcontracted with Marloch Manufacturing Corp., a New York corporation, to manufacture the houses. General Houses later executed to Marloch Manufacturing Corp. an assignment of all monies to be paid by the R.F.C. General Houses was unable to sell the houses to the general public and tried to tender them to the R.F.C. in accordance with the guarantee. When the R.F.C. refused either to provide forms for tendering the houses, or to accept the houses when tendered informally, General Houses sued the R.F.C. in the federal court in Chicago. That suit was dismissed for failure to join Marloch Manufacturing Corp. which was held to be an indispensable party. General Houses, Inc., v. Reconstruction Finance Corporation, D.C.D.Ill.1948, 81 F.Supp. 202. In 1950 General Houses sued Marloch Manufacturing Corp., its parent corporation, Greenport Basin and Construction Co., and Marshall Tulloch, president of Marloch Manufacturing Corp., (hereinafter all designated as 'Marloch') and the R.F.C. in the Eastern District of New York.
 
 
 3
 The complaint contains 6 counts: (1) Against the R.F.C. for breach of contract; (2) against Marloch Manufacturing Corp. for breach of contract; (3) against the R.F.C. for inducing Marloch Manufacturing Corp.'s breach; (4) against Marloch Manufacturing Corp. for inducing the R.F.C.'s breach; (5) against both and the other Marloch defendants for inducing each other's breach; (6) for a declaratory judgment against the R.F.C. and Marloch Manufacturing Corp. declaring the security assignment null and void.
 
 
 4
 In 1953 General Houses served interrogatories on Marloch. Marloch claims that, pursuant to a tacit agreement between them, these have not yet been answered because Marloch's files have been in Washington, D.C. in connection with related litigation between the R.F.C. and Marloch. General Houses denies the existence of such an agreement.
 
 
 5
 Following the death of Marshall Tulloch in November 1954, Marloch evidently decided to speed the case along in order to settle Tulloch's estate. In February 1955 Marloch served notice to take the deposition in March 1955 'of the plaintiff, General Houses, Inc., by its President or other officer thereof having knowledge of the facts and circumstances relating to the allegations of the complaint herein.' General Houses moved to quash this notice on the affidavit of its New York counsel which alleged:
 
 
 6
 'There are no present officers of Plaintiff who have any direct personal knowledge of any matters relative to the issues in this action or who could testify in this action relative thereto. The prior officers of Plaintiff who had such knowledge and who can testify in this action relative to said books, documents, records or memoranda are scattered across the United States from California to Florida, and none of such prior officers are within the control of Plaintiff at the present time, so that Plaintiff could not produce them in New York even if ordered to do so.'
 
 
 7
 Furthermore, Thomas Fisher, plaintiff's Chicago counsel, stated in an affidavit dated April 5, 1955 that General Houses had no present officers, and indeed, no present place of business because it was put out of business allegedly as a result of the matters complained of.
 
 
 8
 These statements under oath are nowhere contradicted. Therefore we must take it as a fact that at the time the deposition was noticed in 1955 the plaintiff no longer had any officers who knew about the transactions nor any control over the former officers who had such knowledge.
 
 
 9
 Notwithstanding General Houses' uncontradicted statements, Judge Bruchhausen denied its motion to quash and set the examination for April 5, 1955. General Houses failed to produce anyone but instead moved for a reargument of its motion to quash. Reargument was denied and the examination reset for April 27, 1955. When plaintiff again defaulted Marloch moved for a dismissal of the complaint under Rule 37(d) and plaintiff's entire complaint was dismissed with prejudice as to Marloch for 'wilfully and deliberately default(ing) in failing to appear for examination.' One year later in May 1956, Marloch moved for entry of final judgment under Rule 54(b). On May 31, 1956 Judge Bruchhausen signed the order for final judgment upon finding that 'there is no just reason for delay in entering final judgment' as to Marloch.
 
 
 10
 On this appeal General Houses contends (1) that it was excused from producing 'its President or other officers' because it had none; (2) that ordering the examination was an abuse of discretion since the notice of deposition was too ambiguous; and (3) that General Houses' interrogatories should have been answered first. Several other issues were also raised and will be dealt with below.
 
 
 11
 Before discussing the merits, we must first deal with the preliminary question of whether the dismissal of the complaint and entry of a final order under Rule 54(b) was proper, for on that hinges the appealability of the dismissal. Rule 54(b) provides that 'when more than one claim for relief is presented in an action * * * the court may direct entry of final judgment upon one or more but less than all of the claims.' Here, Judge Bruchhausen entered a certificate of final judgment dismissing the entire complaint as to Marloch, without distinguishing between those claims in which it was sole defendant and those in which its interest might be so closely related to the R.F.C.'s that severance would violate the unitary nature of that claim.
 
 
 12
 Of the four counts of the complaint in which Marloch is a defendant-- (2) against Marloch Manufacturing Corp. for breach of the sub-contract; (4) against Marloch Manufacturing Corp. for inducing R.F.C.'s breach; (5) against all the defendants for conspiring to induce each other's breaches; (6) for a declaratory judgment on the validity of the assignment-- (2) and (4) are clearly separate claims and hence appealable. Count 5 presents a much more difficult problem, particularly on this inadequate record, but it seems to us to be appealable. under our decisions in Lopinsky v. Hertz Drive-Ur-Self Systems, 2 Cir., 1951, 194 F.2d 422 and United Artists Corp. v. Masterpiece Productions, Inc., 2 Cir., 1955, 221 F.2d 213, 215. The sixth count for a declaratory judgment is clearly not appealable at this time for Marloch Manufacturing Corp.'s assignee status makes it an indispensable party in determining the legal effect of the assignment. See Shields v. Barrow, 1854, 17 How. 129, 130, 136, 58 U.S. 129, 130, 136, 15 L.Ed. 158; General Houses, Inc. v. Reconstruction Finance Corporation, D.C.D.Ill.1948, 81 F.Supp. 202. Therefore, we think there was no proper basis for the district judge's certificate as to the sixth count and the appeal as to that must be dismissed. We assume that the district judge will take action regarding the sixth count in a manner consistent with our decision.
 
 
 13
 On the merits, we hold that Judge Bruchhausen ought not have ordered the examination to proceed in accordance with Marloch's notice. General Houses' statements that it had no present officers at all, and that its former officers were not within its control, were uncontradicted. In such circumstances it was impossible for General Houses to comply with the order and to require it to do so was asking too much. It was thus a fortiori improper to dismiss General Houses' complaint with prejudice.
 
 
 14
 Marloch argues, however, that impossibility of compliance is no defense under Societe Internationale, etc. v. Brownell, 1955, 96 U.S.App.D.C. 232, 225 F.2d 532, certiorari denied 1956, 350 U.S. 937, 76 S.Ct. 302. In that case the plaintiff's complaint was dismissed with prejudice because it was unable to produce documents in its possession which the Swiss government refused to allow out of the country. But that situation would seem to be clearly distinguishable for there the defendant had no alternate way of getting the relevant documents. Here Marloch's own affidavit states that it believes 'that the real principal of plaintiff, General Houses, Inc., is one Howard Fisher, a brother of Thomas Fisher, the Chicago counsel for plaintiff.' Marloch could have verified this fact very easily and if true, could then have called him for the examination, instead of the nonexistent president and other officers. Interrogatories directed to these simple questions, and the names and whereabouts of witnesses, could have been served on General Houses at any time. Moreover, the names of many witnesses appear in the record, and such witnesses as are no longer available for production by General Houses are always available to Marloch for examination under the generous provisions of the Federal Rules.
 
 
 15
 For this reason we also reject Marloch's contention that without compliance with this order, it will be deprived of its right to examine not only witnesses but the adverse party itself. If its belief as to the status of the alleged real principal, Howard Fisher, is correct, we see no reason why Marloch would not be entitled to all the privileges of examination against a party in examining him and using his deposition. If its belief is unfounded, it can easily discover who actually is the 'real principal.'
 
 
 16
 It is also urged upon us that the order should have been construed by General Houses as requiring it to produce someone of its own choosing for the examination. We disagree. When the notice was filed, General Houses moved to vacate on the aforementioned grounds. At that time, the district judge should have informed General Houses as to how it could comply with the notice by producing someone else, and the proper person could then have been decided upon. Something like this has occasionally been done by the district courts. For example, in Porrazzo v. Royal Mail Lines, Ltd., D.C.S.D.N.Y.1944, 13 F.R.D. 320, 321, the Court ordered the master of the ship to be produced when the first mate was called but was unavailable and the notice referred to other persons or persons familiar with the facts and circumstances. Instead Judge Bruchhausen adopted the description in Marloch's notice-- 'President or other officers'-- and twice ordered the examination to proceed despite the undisputed assertion by General Houses that it could not produce anyone who fitted this description. In view of this repeated reference to 'President or other officers' it was too much to ask of General Houses that it construe this as requiring the production of some completely unidentified person, necessarily not an officer of the corporation, in the hope that this would comply with the order.
 
 
 17
 Our decision on the main issue renders it unnecessary for us to decide whether this notice was too ambiguous, for even if it was sufficiently precise, the production of the 'President or other officers' should not have been ordered.
 
 
 18
 General Houses makes several other contentions, none of which have any merit.
 
 
 19
 In its motion to quash, General Houses also asked that its interrogatories be answered before the deposition. The order of examination is at the discretion of the trial judge and we can not say there was an abuse of discretion here.
 
 
 20
 General Houses further urges that the examination not be held in the forum in which it has brought the action, despite the usual rule, see Morrison Export Co. v. Goldstone, D.C.S.D.N.Y.1952, 12 F.R.D. 258, because it did not voluntarily bring the action in New York but was compelled to do so in order to join Marloch Manufacturing Corp., an indispensable party. This contention is clearly frivolous, for the necessities of complying with the requirements of service do not constitute compulsion.
 
 
 21
 General Houses also argues that the dismissal as to Marshall Tulloch, who died in November 1954, is voidable. Our reversal of the dismissal makes that question moot.
 
 
 22
 Finally, General Houses asks that the expenses of any examination be paid by Marloch because General Houses has been rendered impecunious by Marloch's unlawful actions. But Marloch's responsibility is precisely the question at issue, and General Houses has no right to have the decision anticipated.
 
 
 23
 For the above noted reasons we think the dismissal was erroneous. However, we think it would involve unnecessary delay and expense for Marloch to have to file interrogatories to ascertain the name of the appropriate person to examine. We therefore remand the case, with permission to Marloch to amend its notice so as to require General Houses to produce whoever is in charge of its affairs.
 
 
 24
 Reversed and remanded for other proceedings consistent with our opinion, except for count 6 as to which the appeal is dismissed.
 
 
 25
 MEDINA, Circuit Judge.
 
 
 26
 I dissent. The Rules make provision for discovery proceedings against a party, in addition to laying out a pattern of procedure to be followed where it is desired to take the deposition of a witness. Here plaintiff chose to adhere to its indefensible position that it might disregard entirely the direction that as plaintiff it submit itself for examination, and the dismissal followed, as provided in Rule 37. The ruling, which I think implicit in Judge Bruchhausen's decision, that the notice to plaintiff embraced those in charge de facto as well as those guiding plaintiff's destiny de jure, appeals to me as sound common sense.
 
 
 27
 This stale claim has been cluttering up the docket for many years. Experience teaches that the net result of the action now taken will be a period of shadow boxing, having little to do with a decision of the issues on the merits. And I cannot get out of my mind the notion that the position taken by plaintiff before Judge Bruchhausen, and the prosecution of this appeal, have no other purpose than to bring such pressure against those prejudiced by delay in the settlement of the Marshall E. Tulloch estate, and by the withholding in escrow of a substantial part of the money paid on the sale to Bridgeport Brass Company of the capital stock of National Cored Forgings, Inc. (the successor by merger of Marloch Manufacturing Corporation and the Greenport Basin and Construction Company), that some settlement will eventuate by which an infinitesimal part of the $6,000,000 claimed in the complaint will be paid as the price of releasing the balance of the fund.
 
 
 28
 In any event, I fear we are taking some of the teeth out of a phase of the discovery procedure provided by the Rules, which is quite as essential to the 'just, speedy, and inexpensive determination of every action', Rule 1, as is the broad scheme of taking depositions, and bringing the facts out in the open.
 
 
 29
 I have already taken occasion to comment on 'artful maneuvers and procedural sallies which serve little purpose other than to throw sand in the judicial machinery' and to induce payments for what is euphemistically called 'nuisance value,' Lyons v. Westinghouse Electric Corporation, 2 Cir., 222 F.2d 184, 194; and I think that is what we have before us here. It is idle to talk about bringing the court calendars up to date, unless we are to be more realistic about clearing out the dead wood.