75 N.J. Super. 182 (1962)
182 A.2d 577
FLOYD G. HOEK, DEFENDANT-RESPONDENT,
v.
BOARD OF EDUCATION OF THE CITY OF ASBURY PARK IN THE COUNTY OF MONMOUTH, STATE OF NEW JERSEY, PLAINTIFF-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 18, 1962.
Decided June 21, 1962.
*184 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Joseph N. Dempsey argued the cause for appellant.
Mr. Edward W. Currie argued the cause for respondent.
The Attorney General joined in respondent's brief.
PER CURIAM.
The Board of Education of Asbury Park appeals from a determination of the State Board of Education reversing a decision of the State Commissioner of Education which upheld respondent Hoek's dismissal as secretary-business manager of the Asbury Park school system, on charges heard and determined by the local board of education pursuant to R.S. 18:5-51, as amended by L. 1938, c. 247. (Hearings on charges preferred against any employee of a board of education who is under tenure in any office, position or employment covered by Title 18 of the Revised Statutes must now be conducted in accordance with the Tenure Employees Hearing Act, L. 1960, c. 136; N.J.S.A. 18:3-23 et seq., which became effective October 5, 1960, after Hoek's dismissal on April 22, 1958.)
Following an investigation of the Asbury Park school system by a committee of the board of education, 14 charges were preferred against Hoek in August 1957. Board member Novogrod then preferred 17 additional charges on October 21, 1957, followed by 9 more on January 14, 1958 *185 and 1 on January 29, 1958. These additional charges were accepted by the board for hearing. The board opened its hearings on February 25, 1958 and concluded them on April 21, 1958. At the very outset respondent, through his attorney, moved to disqualify Novogrod by reason of his malice, ill will and prejudice toward respondent, his personal interest in having him dismissed, his sitting in judgment upon charges which he personally had brought, and his prejudgment of the validity and seriousness of the charges. Novogrod participated in the hearings on the motion for disqualification, although he did not take part in the board conference preceding the vote on disqualification, nor did he vote on the question.
The board refused to disqualify Novogrod by a vote of 3-0, a fourth member abstaining. It then proceeded to hear the charges. Of the 41 (14 by the board and 27 by Novogrod), all but 17 were dropped at some time during the proceedings. The 17 comprised one charge that had been brought by the board and 16 by Novogrod. The board found appellant guilty of nine, all of them brought by Novogrod. Novogrod cast the deciding vote in seven.
There is no need to detail the nine charges on which Hoek was found guilty. They may generally be described as alleging conversion of foodstuffs and other property of the board of education to his own use or the use of others; failure to declare in his inventory certain surplus foods and their destruction without justification; falsification of the board minutes so that they did not properly reflect the action allegedly taken by the board at a meeting; employment of maintenance and cafeteria help without board approval; directing the use of school property for the benefit of one of the board members, without authority; and directing a board employee to obtain a motor vehicle license for a third party, on school time and without authority.
The State Commissioner of Education agreed with the local board's finding of guilt on eight of the nine charges. *186 He also determined that Novogrod was not disqualified from participating in the hearings.
Although respondent Hoek, on appeal to the State Board of Education, attacked his dismissal on several grounds, the Board determined that it need consider only one of them, deeming it dispositive of the appeal. That ground was Novogrod's disqualification to participate in the local board hearings because of possible prejudgment of the case.
The now generally accepted gauge of administrative factual finality is whether the factual findings of the administrative agency are supported by substantial evidence. The decision of the State Board of Education reflects a careful consideration of the disqualification hearings record. We have read that record and find ourselves in complete agreement with the conclusion reached by the State Board. We need not consider Novogrod's deep involvement in the Hoek matter, as exemplified by his personally conducting an investigation into the affairs of the secretary-business manager's office, interviewing witnesses, and his preparation and bringing of additional charges after the local board had acted. (We recognize that the bringing of charges by a board of education member does not in itself disqualify him from participation in hearing the charges, Mackler v. Camden Board of Education, 16 N.J. 362 (1954), although we question whether such a member can sit in judgment with a mind wholly unconditioned by charges personally brought. Cf. N.J.S.A. 18:5-51, permitting charges to be filed by any person, whether a member of the school board or not.) We conclude that the State Board's decision is well supported by substantial evidence; like the Board, we find uncontradicted evidence that Novogrod was disqualified from hearing the Hoek charges because, whether consciously or unconsciously, he prejudged the case.
The most damaging evidence against Novogrod came from two attorneys, Abraham Frankel and Harry Green, witnesses produced by Hoek on his motion for disqualification. *187 Frankel, who had represented Hoek until January 8, 1958, testified that Novogrod had phoned him the next afternoon, January 9, regarding a rumor that he was withdrawing from the case. Frankel confirmed the fact and told Novogrod that Edward W. Currie, Esquire, now represented Hoek. Novogrod said that he felt Hoek ought to resign; he told Frankel, "If you knew what I have in my file against Mr. Hoek, why then you would understand why I am suggesting this." He went on to say, "You know that there are criminal charges, that there may be an indictment." When Frankel asked Novogrod when he wanted Hoek to resign, he replied, "As of February 1st," and insisted upon that date. Novogrod suggested that Frankel speak to Hoek to determine his attitude about resigning. Later in the conversation Novogrod said that unless Hoek resigned, he intended to move for his suspension at the next board meeting on January 14. Then he said:
"You know, I feel a great responsibility as a member of the board, and this man Hoek is a thief, and I don't trust him, and he exercises a great deal of authority on that board."
Frankel again reminded Novogrod that he no longer represented Hoek, but promised he would talk to him that evening. Frankel did speak to Hoek, and Hoek said he had no intention of resigning.
Green had been attorney for the board of education before the Hoek hearings. He testified that sometime in December of 1957 Novogrod had suggested that an attempt be made to obtain Hoek's resignation, effective immediately, and he would then withdraw the charges and make an appropriate statement. Novogrod had said, in effect, that if Hoek did not resign, the probabilities were that the matter would come up before the grand jury. Green further testified that he had had several telephone conversations with Novogrod in an attempt to find a plan acceptable to Frankel, then representing Hoek, that would result in a resignation. *188 Novogrod had agreed to Green's suggestion that Hoek be permitted to resign without prejudice, and, instead of resigning immediately, be given until January 31, 1958 to do so. Asked to describe Novogrod's attitude toward Hoek, Green said:
"It is hard to characterize. I would say he was opposed to Mr. Hoek. I don't see how I can put it any other way. As to what motivated it, or whether it sprang from ill will or malice or something like that, I can't tell. He was opposed to Mr. Hoek."
At the conclusion of the testimony of the witnesses produced on Hoek's motion for disqualification, Novogrod said he wished to make a statement. In the course of that statement, Frankel, who was present at the hearings, insisted that Novogrod be placed under oath, like the other witnesses. Novogrod resisted the demand, and the board sustained him.
We find it significant that Novogrod did not contradict Frankel's testimony regarding the telephone conversation when Novogrod is alleged to have said, "Hoek is a thief, and I don't trust him." He dismissed Frankel's testimony with the observation, "I would not cross-examine him as I consider his very presence as a witness a betrayal of the common confidence in confidential communication between attorney and attorney." Nor did Novogrod meet Green's testimony head-on.
The State Board concluded that it could read Novogrod's statement that Hoek was a thief "in no other way than that he [Novogrod] was then convinced, before trial, of Hoek's guilt on at least those charges which implied that Hoek had taken school property for his own use." Although the State Board could not determine to a certainty "whether the subjective processes of Mr. Novogrod's mind in adjudging the evidence were truly impartial and uninfluenced by his stated conviction that in his opinion Hoek was `a thief,'" it held that the evidence presented through Frankel's testimony demonstrated the evil that resided in the "possibility *189 of his consciously or unconsciously doing so." Since Novogrod was sitting in judgment, the State Board found it "of the very essence that justice avoid even the appearance of injustice,"  referring to James v. State, 56 N.J. Super. 213, 217, 218 (App. Div. 1959). We join in these conclusions.
The State Board found that the taint of Novogrod's disqualification permeated the entire membership of the board of education, so that the action taken by the board was voidable by reason of his disqualification alone. Such is the law. Pyatt v. Mayor, etc., of Dunellen, 9 N.J. 548, 557 (1952). It therefore reversed the decision of the State Commissioner of Education and set respondent's dismissal aside. The State Board emphasized that in so doing it was not to be understood as passing in any way upon the question of whether the charges leveled against Hoek were supported by the proofs. Nor was it passing upon the question of whether Hoek was a fit employee, or should be retained as secretary-business manager. In conclusion it said:
"* * * Our decision, however, is without prejudice to the right of the local Board, or any other proper person, to file charges and prosecute them for hearing pursuant to the `Tenure Employees Hearing Act' [L. 1960, c. 136; N.J.S.A. 18:3-23 et seq.] before the Commissioner, if it is deemed, in the public interest, that such charges should be brought. Under that procedure, the vice in the former system of prosecution and hearing by the local Board will not be present, and the Commissioner, or his deputized Hearer, rather than reviewing the written record as he did below, will have an opportunity to observe such witnesses as may testify before him. The proofs here are peculiarly in that area where credibility of witnesses is crucial and the long-recognized aid of personal observation of witnesses would be available in determining that credibility. We likewise add that, if such reinstitution of charges is deemed in the public interest, the charges can be framed with more clarity and specificity than those below and the hearing can proceed without the prolixity which characterized the record below."
Accordingly, we find that the State Board of Education did not, as appellant contends, err in finding that Novogrod *190 was disqualified and that his presence at the hearings on the charges tainted the entire proceedings and denied respondent a fair trial.
The second point raised by appellant in its brief is that assuming the State Board was correct in reversing the decision of the State Commissioner of Education, it erred in not remanding the entire matter to the local board of education for final hearing, citing Laba v. Newark Board of Education, 23 N.J. 364 (1957), and Lowenstein v. Newark Board of Education, 35 N.J. 94 (1960), in support. Laba was decided before the passage of the Tenure Employees Hearing Act in 1960, and therefore has no pertinence. The reference to what was said in Lowenstein (at page 118) regarding a remand to the local board of education, is dictum since the Supreme Court itself undertook to bring the case to a final conclusion because of the six years of controversy and litigation that had attended the case.
Whatever the argument made by appellant in its brief, its counsel agreed at oral hearing that the matter should go back to the local board for the filing of charges by it or any other proper person, and the prosecution of those charges before the State Commissioner of Education under the Tenure Employees Hearing Act, if the local board deemed it in the public interest that charges be brought. Counsel for appellant conceded that this was the preferred procedure, and he informed the court that he had so agreed before the State Board.
A hearing before the State Commissioner on charges that might be brought by the local board or any person (see N.J.S.A. 18:5-51; L. 1960, c. 137, sec. 1) would eliminate the vice which inhered in the former practice, authorized by R.S. 18:5-51, as amended by L. 1938, c. 247, of the board's being at one and the same time investigator, prosecutor and judge. The procedure now called for by the Tenure Employees Hearing Act was initiated and supported by the New Jersey Education Association. See *191 32 N.J.E.A. Review, pp. 178 and 220 (1958-59); 33 N.J.E.A. Review 251 (1959-60); and see the Statement attached to Senate Bill No. 54 and Assembly Bill No. 104, introduced in the 1960 Legislature, and which became L. 1960, c. 136.
It seems clear from the concluding quotation of the State Board's decision, quoted above, that it left the way open for the filing of new charges, or at the least the reinstitution of charges, deemed in the public interest, which charges could be framed "with more clarity and specificity" than those considered by the local board.
As was said in Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 381 (1954), a remedial and procedural statute is ordinarily applicable to procedural steps in pending actions, absent a clear indication of a legislative intent contra. Such a statute is given retrospective effect insofar as it provides a change in the form of remedy or provides a new remedy for an existing wrong. Cf. City of Wildwood v. Neiman, 44 N.J. Super. 209, 214 (1957), where we observed that our courts have consistently held that where a statute deals with procedure only, it applies to all actions and proceedings  those which have accrued or are pending, as well as those yet to be brought.
We therefore affirm the State Board's determination that the setting aside of respondent Hoek's dismissal was without prejudice to the right of the Asbury Park Board of Education, or any other person, to file charges and prosecute them for hearing before the State Commissioner of Education, pursuant to the Tenure Employees Hearing Act, if it is deemed in the public interest that such charges be brought.
Affirmed.