NORBERTO REYES ET AL., Plaintiffs and Appellants, *v.* MAYAGÜEZ TRANSPORT CO., INC., Respondent and Appellee.

No. 577. Decided October 25, 1962.

260

*Juan Mari Bras, Lorenzo Piñeiro Rivera, Vicente Géigel Polanco,*
and *Vicente Géigel Lanuza* for appellants. *A. Ramírez Silva*
for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge
of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

On April 9, 1959 appellants herein filed an action in claim
for wages against the Mayagüez Transport Co., Inc., in the
Superior Court, Mayagüez Part. It was alleged in the com-
plaint that about the years 1949 to 1958 plaintiffs rendered
services to respondent; that those services were rendered dur-
ing the legal workday as well as during extra hours in excess
of 8 hours per day, 48 hours per week, as well as during holi-
days. It was alleged that for this work they did not receive

double compensation for the extra hours as provided by § 9 of Act No. 379 of May 15, 1948,[1] for works on the basis of unit of work or by the job.

They based their claim on the aforesaid section as well as on the provisions of Mandatory Decree No. 12 of December 4, 1946, as amended on January 8, 1948.[2] To institute their claim plaintiffs made use of the procedure established by Act No. 10 of 1917, as amended.[3]

On May 26, 1959 respondent answered the complaint and served the workers with some interrogatories requesting information on the period during which each one of the plaintiffs worked, "stating the exact dates" as well as "the number of extra hours of work which they claimed and the specific sum to which each claim amounted." Plaintiffs did not answer the aforesaid interrogatories and filed a "Motion for the Examination of Payrolls and Interrogatory." On August 19 the court ordered respondent to place its books and payrolls at the disposal of plaintiffs.

---

[1] This section provides:

"If the contract is on the basis of piece work or any other unit of work, the employee shall be entitled to receive double compensation for the pieces or units made during extra hours."

[2] The above-mentioned decree—29 R.&R.P.R. § 245n-602—establishes the different classifications in the transportation industry as well as the minimum wages which are to be paid. Likewise, it defines the industry, establishing that it "shall comprise, but without limitation, every act, process, operation, work or service that is necessary or incidental or is related to the transportation or conveyance of persons or things, from one place to another, by or in any kind of motor vehicle, including those that run by rails."

The workers in the present case were employed in the transportation of sugar sacks from Central Coloso to the docks in Mayagüez, and in the transportation of general cargo between the cities of Ponce and Mayagüez.

[3] Said Act was repealed and substituted by Act No. 2 of October 17, 1961; 32 L.P.R.A. §§ 3118, 3132 (1961 Supp.).

The complaint contained also a relation of the amount owed to each plaintiff, as well as a request that an equal amount be granted by way of damages as well as costs, expenses and attorney's fees, as provided by § 13 of Act No. 379; 29 L.P.R.A. § 282.

In July 1960 the trial judge ordered the dismissal of the case because of inaction. At the request of plaintiffs we granted certiorari, and on May 8, 1961 we vacated the judgment in question, remanding the case for further proceedings.

Plaintiffs then submitted some interrogatories [4] and respondent challenged them. The aforesaid challenge was based on the provisions of Rule 30 of the Rules of Civil Procedure

---

[4] The information requested was the following:

"FIRST: State the exact date in which each one of the plaintiffs began working for respondent and the exact date in which each one of the aforesaid plaintiffs stopped working for respondent.

"SECOND: State what was the agreement, either written or oral, which specified the wages and other working conditions of plaintiffs and respondent, specifying the wage rate or rates agreed upon throughout the whole period covering this complaint, as well as whether the payment of wages was regulated on the basis of hours worked or on the basis of trips made.

"THIRD: If the wage rate was calculated on the basis of hours worked, state whether there was a fixed rate to calculate the work realized from day to day, or whether on the contrary, the basic rate varied from day to day.

"FOURTH: If the basic rate varied from day to day or from week to week, indicate what was the criterion agreed upon to make that rate.

"FIFTH: Indicate, with relation to each one of plaintiffs, the number of hours worked in each one of the days of the period comprised in the heading of the complaint, the total of wages paid to each one of the aforesaid plaintiffs on each one of the aforesaid days, the hour of commencing and the finishing hours of work of each plaintiff on each one of the aforesaid days and the number of trips made by each one of the aforesaid plaintiffs on each of the aforesaid days.

"SIXTH: Indicate the nature of the work of each one of the plaintiffs during the period comprised between the years 1949 to 1958, inclusive.

"SEVENTH: Indicate what was your purpose in annotating and keeping records of the number of trips made by each one of the plaintiffs on each one of the working days on which the latter rendered services to respondent.

"EIGHTH: Indicate the rate used to calculate the extra hours worked by each one of plaintiffs in excess of 8 hours per day, 48 hours per week, or during the weekly day of rest or holidays, respecting the basic rate, whether by unit or by hour on each one of the aforesaid trips."

of 1958,[5] and the fact that the information requested was basically the same as that requested by respondent in its interrogatory and that if plaintiffs did not obtain that information notwithstanding the opportunities and the time which was granted them, such negligence should not be remedied by compelling respondent to incur unnecessary expenses and inconveniences to answer the interrogatory.

At the hearing of the motion, plaintiffs alleged that the payroll offered by respondent was "fraudulent" and that the interrogatory submitted by them was aimed at obtaining the necessary information to prepare their case adequately as well as to be able to answer respondent's interrogatory. The trial judge, by an order of June 9, 1961, granted plaintiffs 30 days in which to answer respondent's interrogatory. It provided "that once the answer is filed, respondent will be ordered to answer the other one." They did not do so within the term granted nor appeared at the hearing to try the case on its merits.

On August 8, at respondent's request, the claim was dismissed. Judgment was rendered accordingly. In order to review this action we issued this writ.

Hence, after our judgment of May 8, 1961, reversing that of the trial court which dismissed the case because of inaction, the respondent court, on June 9, granted plaintiffs 30 days in which to answer the interrogatories submitted by respondent. In spite of the fact that the claimants stated that in order to answer them it was necessary that respondent previously answer the ones formulated by them, the court stated that respondent should answer them after the claimants had answered those of the former. The claimants did

---

[5] The above-mentioned rule provides in its pertinent part:

"The number of interrogatories or of sets of interrogatories to be served is not limited except as justice requires to protect the party from annoyance, unnecessary expenses, embarrassment, or oppression. The provisions of Rule 27.2 are applicable for the protection of the party from whom answers to interrogatories are sought under this rule."

not answer and they failed to appear on the day set for the hearing of the case on its merits. Then the court dismissed the claim under the authority of the provisions of Rule 34.4 [6] of the Rules of Civil Procedure and in § 5 of Act No. 10 of 1917.[7]

■■ Rule 34.4 as well as Rule 37(d) of 1943, grants discretion to the trial court to dismiss an action if the plaintiff *willfully* [8] fails to serve answers to the interrogatories submitted by the opposite party. *Peña* v. *Heirs of Blondet*, 72 P.R.R. 8 (1951); *Pepín* v. *Ready-Mix Concrete*, 70 P.R.R. 723 (1950); *Craig* v. *Far West Engineering Company*, 265 F.2d 251 (9th Cir. 1959). However, the rule establishes that the failure to serve answers must be willful, that no justification whatsoever exist for failing to do so, *General Houses, Inc.* v. *Marloch Manufacturing Corp.*, 239 F.2d 510 (2d Cir. 1956); *Cardox Corporation* v. *Olin Mathieson Chemical Corp.*, 23 F.R.D. 27 (D.C.S.D. Ill. 1958); 4 MOORE, Federal Practice

---

[6] This rule provides as follows:

"If a party or an officer or managing agent of a party wilfully fails to appear before the officer who is to take his deposition, after being served with a proper notice, or fails to serve answers to interrogatories submitted under Rule 30 after proper service of such interrogatories, the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party."

[7] Section 5 provided as follows:

"Where the parties shall fail to appear at the act of the hearing or where the defendant only shall appear, the court shall dismiss the claim; but where the complainant only appears, the court shall, at the instance of the complainant, render judgment against the defendant, granting the remedy sought. In either case the judgment shall be final and no appeal may be taken therefrom; *Provided, however,* That the aggrieved party may, within five days following the service of notice of the judgment, appeal from the District Court to the Superior Court, or from the Superior Court where the claim originated to the Supreme Court, for a review of the proceedings."

[8] Although the term "willfully" appears only in the first part of the rule, when it refers to provisions it is held that it also applies to the second part which concerns interrogatories. *Valenstein* v. *Bayonne Bolt Corporation*, 6 F.R.D. (D.C. E.D.N.Y. 1946); 4 MOORE, Federal Practice § 37.04 (2d ed.); 2A BARRON & HOLTZOFF § 855 (1961 ed.).

§ 37.04 (2d ed.) ; 2A BARRON & HOLTZOFF § 855 (1961) ; *Developments-Discovery*, 74 Harv. L. Rev. 940, 986 (1961), and certainly it can not be stated that in this case plaintiffs had no justification to serve answers to the interrogatories. Respondent had on its records the information which it was requiring from the claimants. We have already seen that in the interrogatories respondent required information on the period during which each one of the complainants worked "stating the exact dates" as well as "the number of extra hours of work which they claimed and the specific sum to which each claim amounted." The information of the payrolls and other documents appearing in its records and which the law requires that it keep, could have been easily obtained. It seems appropriate to recall what we stated in *Sierra, Sec. of Labor* v. *Superior Court*, 81 P.R.R. 540, 548 (1959) :

"The courts have often had to face attempts of abuse of discovery of evidence and taking of depositions. For example: in lawsuits involving claims of wages filed in federal courts, defendant employers have required hundreds or thousands of plaintiff employees to answer questions as to their shifts and hours of work, time of employment, earned compensation, specific jobs performed day by day for years, etc. Since the workmen concerned are poorly educated persons, who kept no records, and whose jobs had shifted frequently, the burden caused by such interrogatories was considerable. If to this we add that defendants in those cases had on their records all the information required from the workmen, or could have easily obtained it by properly investigating a few selected employees (as index or test applicable to all the others), it is easy to conclude that such interrogatories were improperly and oppressively used."

The Legislative Assembly, conscious of the problem which arose from situations like those which we are now considering, and which were the object of our comment in the *Sierra* case, provided the following upon approving the new Act regulating claims of wages:

"In all cases prosecuted under this Act, the Rules of Civil Procedure shall govern insofar as they are not in conflict with

the specific provisions of this Act or with the summary nature of the procedure hereby established; Provided, in relation with the pre-trial means of disclosure authorized by the Rules of Civil Procedure, that the defendant may not use them to obtain information which must appear in the records, payrolls, wage lists and other records which the employers are bound to keep under the provisions of the Minimum Wage Act and the regulations promulgated thereunder, except any testimony given or document submitted by the complainant in any judicial action; And that neither party may submit more than one interrogatory or deposition, nor shall a party take a deposition from the other after having submitted an interrogatory thereto, nor submit the other party to an interrogatory after having taken a deposition therefrom, except under exceptional circumstances which, in the judgment of the Court, justify the granting of another interrogatory or another deposition. The taking of depositions from the witnesses shall not be permitted without authorization of the court, after ascertaining the necessity of using said procedure." Section 3 of Act No. 2 of October 17, 1961; 32 L.P.R.A. § 3120 (1961 Supp.).

▆▆▆▆ Respondent's conduct in requiring information from the claimant laborers which it already possessed was clearly inappropriate in the light of what was stated in *Sierra* and is sufficient justification for complainants' action. Besides, since this case concerns a law of procedural character, the provisions of the above-copied Act of 1961 are applicable to the facts of this case even though it was promulgated after the judgment of the court below. *Fuentes* v. *Sec. of the Treasury*, 80 P.R.R. 198 (1958) ; *People* v. *Superior Court*, 75 P.R.R. 501 (1953) ; *Fajardo* v. *District Court*, 69 P.R.R. 441 (1949) ; *Pagán* v. *Otero*, 69 P.R.R. 470 (1949) ; *White Star Bus Line, Inc.* v. *District Court*, 60 P.R.R. 348 (1942) ; *Zayas* v. *Molina*, 50 P.R.R. 619 (1936) ; *Ojeda* v. *Gavilán*, 46 P.R.R. 386 (1934) ; *Hoek* v. *Bd. of Ed. of Asbury Park*, 182 A.2d 577 (N.J. 1962) ; the same norm is applied in Spain, 1 CASTRO Y BRAVO, *Derecho Civil de España* 727 (3d ed. 1955).

There remains to be considered whether or not the trial judge was justified in dismissing the action because of the claimants' failure to appear.[9]  He was not.  Aside from the fact that plaintiffs should have appeared at the hearing to explain the reasons why they were in no condition to answer the interrogatories, the truth is that the case was not ready to be heard on its merits because of the fact that respondent had not yet answered the interrogatories submitted by the claimants.  *Cf. Ramírez de Arellano* v. *Sec. of the Treas.*, 85 P.R.R. 793 (1962), and *Link* v. *Wabash Railroad Co.*, 370 U.S. 626 (1962).

In view of the foregoing, the judgment appealed from rendered by the Superior Court, Mayagüez Part, on August 8, 1961, will be reversed and the case remanded for further proceedings.

---

[9] Act No. 2 of October 17, 1961 contains an analogous provision to § 5 of the Act of 1917.  32 L.P.R.A. § 3123 (1961 Supp.).