Norberto Reyes et al., querellantes y recurrentes, *v.* Mayagüez Transport Co., Inc., querellada y recurrida.

*Número:* 577      *Resuelto:* 25 de octubre de 1962.

*Juan Mari Bras, Lorenzo Piñeiro Rivera, Vicente Géigel Polanco* y *Vicente Géigel Lanuza,* abogados de los recurrentes; *A. Ramírez Silva,* abogado de la recurrida.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El 9 de abril de 1959 los aquí recurrentes radicaron en el Tribunal Superior, Sala de Mayagüez, demanda sobre reclamación de salarios contra la Mayagüez Transport Co., Inc. En dicha demanda se alegó que entre los años de 1949 a 1958 los querellantes prestaron servicios a la querellada; que dichos servicios fueron tanto durante la jornada legal de trabajo como en horas extras en exceso de 8 horas diarias, de 48 horas a la semana, al igual que en días feriados. Se alegó que por este trabajo no recibieron compensación al tipo doble que para las horas extras provee el artículo 9 de la Ley Núm. 379 de 15 de mayo de 1948[1] en trabajos convenidos por unidad de obra o ajuste.

Basaban su reclamación en el referido artículo así como en las disposiciones del Decreto Mandatorio Núm. 12 de 4

---

[1] Dicho artículo—29 L.P.R.A. sec. 278—provee:

"Si el contrato es a base de trabajo por pieza o por cualquiera otra unidad de obra, el empleado tendrá derecho a recibir doble compensación por las piezas o unidades hechas durante horas extras."

de diciembre de 1946, según fue enmendado el 8 de enero de 1948.([2]) Para el trámite de su reclamación los querellantes hicieron uso del procedimiento establecido por la Ley Núm. 10 de 1917, según había sido enmendada.([3])

El 26 de mayo de 1959 la querellada contestó la demanda y notificó unos interrogatorios a los obreros solicitando información sobre el período durante el cual trabajó cada uno de los querellantes, "con expresión de fechas exactas" así como "el número de horas extras de trabajo que reclaman y el importe específico a que asciende la reclamación de cada uno". Los querellantes no contestaron dichos interrogatorios y radicaron una "Moción Sobre Examen de Nóminas e Interrogatorio". El 19 de agosto el Tribunal ordenó a la querellada que pusiera sus libros y nóminas a disposición de los querellantes.

En julio de 1960 el juez de instancia ordenó el archivo del caso por inactividad. A petición de los querellantes expedimos certiorari y en mayo 8 de 1961 anulamos la sentencia en cuestión, devolviendo el caso para ulteriores procedimientos.

---

([2]) El mencionado decreto—29 R. & R.P.R. sec. 245n-602—establece las distintas clasificaciones en la industria de la transportación así como los salarios mínimos que han de pagarse. Define igualmente la industria, estableciendo que "comprenderá, sin que ello se entienda como limitación, todo acto, proceso, operación, trabajo o servicio que sea necesario o incidental o esté relacionado con la traslación o conducción de personas o cosas, desde un sitio a otro, por o en cualquier clase de vehículo de motor, incluyendo aquellos que corran por rieles."

Los obreros en el presente caso se dedicaban al transporte de sacos de azúcar desde la Central Coloso hasta los muelles de Mayagüez y al transporte de carga general entre las ciudades de Ponce y Mayagüez.

([3]) Dicha ley fue derogada y substituida por la Ley Núm. 2 de 17 de octubre de 1961—32 L.P.R.A. secs. 3118, 3132, (Supl. 1961)—

La demanda contenía además una relación de la cantidad adeudada a cada querellante así como una súplica de que se concediera una cantidad igual por concepto de daños y perjuicios así como costas, gastos y honorarios de abogados, según provee el artículo 13 de la Ley Núm. 379—29 L.P.R.A. sec. 282—.

Sometieron entonces los querellantes unos interrogatorios(⁴) y la querellada los impugnó. Se basó dicha impugnación en las disposiciones de la Regla 30 de las de Procedimiento Civil del 1958(⁵) y en que la información solicitada era básicamente igual a la requerida por la querellada en

(⁴) La información solicitada es la siguiente:

"PRIMERO:—Diga la fecha exacta en que comenzó a trabajar para la querellada cada uno de los querellantes y la fecha exacta en que cada uno de dichos querellantes cesó en su empleo con la querellada.

"SEGUNDO:—Diga cuál era el convenio, escrito u oral mediante el cual se especificaban los salarios y demás condiciones de trabajo de los querellantes y la querellada, especificando el tipo o tipos de salarios convenidos a través de todo el período que cubre esta querella, así como si el pago de salarios se calculaba a base de horas trabajadas o a base de viajes realizados.

"TERCERO:—Si el tipo de salario se calculaba a base de horas trabajadas, diga si había un tipo fijo sobre el cual calcular el trabajo realizado de día en día, o si, por el contrario, el tipo básico variaba de día en día.

"CUARTO:—Si el tipo básico variaba de día en día o de semana en semana, indique cuál era el criterio convenido para producir esa variación.

"QUINTO:—Indique, en relación con cada uno de los querellantes, el número de horas trabajadas en cada uno de los días del período comprendido en la querella en el caso del epígrafe, el total de salarios pagados a cada uno de dichos querellantes en cada uno de dichos días, la hora de entrada y hora de salida de cada querellante en cada uno de dichos días y el número de viajes realizados por cada uno de dichos querellantes en cada uno de dichos días.

"SEXTO:—Indique la naturaleza del trabajo de cada uno de los querellantes durante el período comprendido entre los años 1949 a 1958 inclusive.

"SEPTIMO:—Indique cuál era el propósito de ustedes anotar y llevar récords del número de viajes realizados por cada uno de los querellantes en cada uno de los días de trabajo en que éstos prestaron servicios a la querellada.

"OCTAVO:—Indique el tipo a que se calculaban las horas extras trabajadas por cada uno de los querellantes en exceso de 8 horas diarias, de 48 a la semana o durante el día semanal de descanso o días festivos, con referencia al tipo básico, por unidad o por hora en cada uno de dichos viajes."

(⁵) La referida regla dispone en su parte pertinente: "No se limitará el número de interrogatorios o de grupos de interrogatorios que pue-

su interrogatorio y que si los querellantes no obtuvieron esa información a pesar de las oportunidades y el tiempo que se les concedió, tal negligencia no debía ser remediada obligando a la querellada a incurrir en gastos y molestias innecesarias para contestar el interrogatorio.

Al celebrarse la vista de la moción, los querellantes alegaron que la nómina que les ofreció la querellada era "fraudulenta" y que el interrogatorio sometido por ellos iba encaminado a obtener la información necesaria para preparar su caso debidamente así como para poder contestar el interrogatorio de la querellada. El juez de instancia concedió, por resolución de 9 de junio de 1961, a los querellantes 30 días en los cuales debían contestar el interrogatorio de la querellada. Dispuso "que una vez radicada la contestación, se ordenará a la parte querellada contestar el otro". No lo hicieron dentro del plazo concedido ni comparecieron a la vista señalada para ver el caso en su fondo.

El 8 de agosto, a petición de la querellada, la reclamación fue desestimada. Se dictó sentencia de conformidad. Para revisar esta actuación expedimos el presente auto.

Así, luego de nuestra sentencia de 8 de mayo de 1961, revocando la del tribunal de instancia archivando el caso por inactividad, el tribunal recurrido, el 9 de junio le concedió a los querellantes 30 días para contestar los interrogatorios formulados por la querellada. A pesar de que los reclamantes manifestaron que para poder contestarlos se requería que la querellada contestara previamente los formu-

den ser notificados, excepto según lo requiere la justicia para proteger a una parte de molestias, gastos innecesarios o situaciones embarazosas u opresivas. Las disposiciones de la Regla 27.2 son aplicables para proteger a la parte de quien se solicite contestaciones a interrogatorios de acuerdo con esta regla."

lados por ellos, el tribunal declaró que la querellada debía contestarlos luego de que los reclamantes formularan las contestaciones a los de la querellada. Los reclamantes no contestaron y el día que se señaló para la celebración de la vista en su fondo, no comparecieron. El tribunal entonces desestimó la reclamación amparándose en las disposiciones de la Regla 34.4([6]) de las de Procedimiento Civil y en la Sección 5 de la Ley Núm. 10 de 1917([7]).

La Regla 34.4 al igual que la 37(d) de las de 1943 concede discreción a los tribunales de instancia para desestimar una acción si la parte actora *intencionalmente*([8]) no contesta los interrogatorios formulados por la parte contraria. *Peña* v. *Sucn. Blondet*, 72 D.P.R. 9 (1951); *Pepín* v. *Ready-Mix Concrete*, 70 D.P.R. 758 (1950); *Craig* v. *Far West Engineering Company*, 265 F.2d 251 (9no. cir. 1959). Ahora

---

([6]) Dispone así dicho precepto:

"Si una parte, o un funcionario o agente administrador de una parte, dejare intencionalmente de comparecer ante el funcionario que ha de tomar su deposición después de haber sido debidamente notificado; o dejare de presentar y notificar contestaciones a los interrogatorios sometidos de acuerdo con la Regla 30 después de habérsele notificado debidamente los mismos; el tribunal, mediante moción y notificación, podrá eliminar total o parcialmente cualquier alegación de esa parte, o desestimar el pleito o procedimiento o alguna parte del mismo, o dictar sentencia en rebeldía contra dicha parte."

([7]) Disponía así la sección 5:

"Si las partes no comparecieren al acto del juicio, o si compareciere sólo el querellado, la corte desestimará la reclamación, pero si sólo compareciere el querellado, la corte, a instancias del querellante, dictará sentencia contra el querellado concediendo el remedio solicitado. En uno u otro caso la sentencia será final y de la misma no podrá apelarse; Disponiéndose, sin embargo, que la parte perjudicada podrá acudir del Tribunal de Distrito al Tribunal Superior, o del Tribunal Superior en que se haya originado la reclamación al Tribunal Supremo, dentro de los 5 días siguientes a la notificación de la sentencia, para que se revisen los procedimientos."

([8]) Aunque el vocablo "intencional" aparece sólo en la primera parte de la regla, cuando se refiere a las deposiciones se sostiene que se aplica también a la segunda parte que trata sobre los interrogatorios. *Valenstein* v. *Bayonne Bolt Corporation*, 6 F.R.D. (D.C. E.D.N.Y. 1946); 4 Moore's *Federal Practice*, Sec. 37.04 (2da. ed.); 2A Barron and Holtzoff, Sec. 855 (ed. 1961).

bien, la regla establece que la negativa a contestar debe ser intencional, que no exista justificación alguna para no hacerlo. *General Houses, Inc.,* v. *Marloch Manufacturing Corp.,* 239 F.2d 510 (2do. cir. 1956) ; *Cardox Corporation* v. *Olin Mathieson Chemical Corp.,* 23 F.R.D. 27 (D.C. S.D. Ill. (1958)) ; 4 Moore's *Federal Practice,* § 37.04 (2da. ed.) ; 2A Barron & Holtzoff, Sec. 855 (1961) ; *Developments-Discovery,* 74 Harv. L. Rev. 940, 986 (1961) ; y aquí ciertamente no puede decirse que la parte querellante no tenía justificación para no contestar los interrogatorios. La querellada tenía en su poder la información que le pedía a los reclamantes. Ya hemos visto que en los interrogatorios la querellada solicitaba información sobre el período durante el cual trabajó cada uno de los querellantes, "con expresión de fechas exactas" así como "el número de horas extras de trabajo que reclaman y el importe específico a que asciende la reclamación de cada uno". Fácilmente podían obtener la información de las nóminas y demás documentos obrantes en su poder y que la ley le requiere que conserven. Parece pertinente recordar lo que dijimos en *Sierra* v. *Tribunal Superior,* 81 D.P.R. 554, 563 (1959) :

"A menudo los tribunales han tenido que enfrentarse con intentos de abusar de los procedimientos para descubrir pruebas y tomar deposiciones. Por ejemplo: en pleitos sobre reclamaciones de salarios tramitados ante las cortes federales, los patronos demandados han requerido contestaciones a cientos o miles de empleados demandantes sobre sus turnos de labor, horas de trabajo, períodos de empleo, compensacions devengadas, faenas específicas realizadas día por día durante años, etcétera. Tratándose de obreros que tenían poca educación, que no llevaban records, y que cambiaban con frecuencia de tarea, los inconvenientes causados por dichos interrogatorios eran considerables. Si a eso añadimos que los demandados en esos casos tenían en sus propios records toda la información requerida de los obreros, o podían adquirirla fácilmente mediante una investigación adecuada de un pequeño número de empleados (como

índice o muestra utilizable para todos los demás), es fácil concluir que en realidad se pretendía hacer un uso impropio y opresivo de los interrogatorios."

La Asamblea Legislativa, consciente del problema que presentaban situaciones como las que ahora consideramos, y que fueron objeto de comentario por parte nuestra en el caso de *Sierra*, dispuso al aprobar la nueva ley reglamentando las reclamaciones de salarios lo siguiente:

"En los casos que se tramiten con arreglo a esta ley se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de esta ley o con el carácter sumario del procedimiento establecido por la presente; Disponiéndose en relación con los medios de descubrimiento anteriores al juicio autorizados por las Reglas de Procedimiento Civil, que la parte querellada no podrá usarlos para obtener información que debe figurar en las constancias, nóminas, listas de jornales y demás récords que los patronos vienen obligados a conservar en virtud de las disposiciones de la Ley de Salario Mínimo y los reglamentos promulgados al amparo de la misma, excepto cualquier declaración prestada o documento sometido por la parte querellante en cualquier acción judicial; y que ninguna de las partes podrá someter más de un interrogatorio o deposición ni podrá tomar una deposición a la otra parte después que le haya sometido un interrogatorio, ni someterle un interrogatorio después que le haya tomado una deposición, excepto que medien circunstancias excepcionales que a juicio del Tribunal justifiquen la concesión de otro interrogatorio u otra deposición. No se permitirá la toma de deposición a los testigos sin la autorización del tribunal, previa determinación de la necesidad de utilizar dicho procedimiento." Sección 3 de la Ley Núm. 2 de 17 de octubre de 1961, —32 L.P.R.A. sec. 3120 (Supl. 1961)—.

La conducta de la querellada al requerir de los obreros reclamantes información que ella tenía fue claramente improcedente a la luz de lo dicho en *Sierra* y constituye justificación suficiente para la actuación de los querellantes. Además, por tratarse de una ley de carácter procesal, las dispo-

siciones de la ley de 1961 que arriba transcribimos son apli-cables a los hechos de este caso aun cuando ésta fue promul-gada con posterioridad a la sentencia dictada en la corte in-ferior. *Fuentes* v. *Secretario de Hacienda,* 80 D.P.R. 203 (1958); *Pueblo* v. *Tribunal Superior,* 75 D.P.R. 535 (1953); *Fajardo* v. *Tribunal de Distrito,* 69 D.P.R. 476 (1949); *Pagán* v. *Otero,* 69 D.P.R. 507 (1949); *White Star Bus Line* v. *Corte,* 60 D.P.R. 356 1942); *Zayas Pizarro* v. *Molina,* 50 D.P.R. 647 (1936); *Ojeda* v. *Gavilán,* 46 D.P.R. 399 (1934); *Hoek* v. *Bd. of Ed. of Asbury Park,* 182 A. 2d 577 (N.J. 1962). Igual norma aplican en España, 1 Castro y Bravo, *Derecho Civil de España,* pag. 727 (3ra. ed. 1955).

Resta ahora considerar si estuvo justificado el juez de instancia en desestimar la acción por la no comparecencia de los reclamantes.(⁹) No lo estuvo. Independientemente del hecho de que los querellantes debieron concurrir a la vista señalada para allí explicar las razones por las cuales no esta-ban en condiciones de contestar los interrogatorios lo cierto es que el caso no estaba listo para verse en su fondo por el hecho de que la querellada todavía no había contestado los interrogatorios de los reclamantes. Cfr. *Ramírez de Are-llano* v. *Srio de Hacienda* 85 D.P.R. 823 (1962) y *Link* v. *Wabash Railroad Co.,* 370 U.S. 626 (1962).

*Por todo lo expuesto se revocará la sentencia recurrida que dictó el Tribunal Superior, Sala de Mayagüez, con fecha 8 de agosto de 1961 y se devolverá el caso para ulteriores procedimientos.*

(⁹) La Ley Núm. 2 de 17 de octubre de 1961 contiene una disposición análoga a la Sección 5 de la Ley de 1917, —32 L.P.R.A. sec. 3123 (Supl. 1961)—.