511 F.2d 1010
 In re The Winner Corporation, formerly known as Winner
Boats, Inc., Debtor.
The WINNER CORPORATION, formerly known as Winner Boats,
Inc., Applicant-Appellee,
v.
H. A. CAESAR & CO., INC., Respondent-Appellant.
 Nos. 74--1719, 74--1720, and 74--2050.
 United States Court of Appeals,
Sixth Circuit.
 Feb. 25, 1975.
 
 Michael S. Landes, Hahn, Hessen, Margolis & Ryan, New York City, for respondent-appellant.
 Michael Miller, Richard Bird, Gracey, Maddin, Cowan & Bird, Nashville, Tenn., for applicant-appellee.
 Before WEICK and CELEBREZZE, Circuit Judges, and DUNCAN*, District Judge.
 WEICK, Circuit Judge.
 
 
 1
 These three appeals were consolidated for hearing. The controversy between the parties arose in proceedings for arrangement under Title XI of the Bankruptcy Act of The Winner Corporation, Debtor, pending since December 4, 1973 in the Bankruptcy Court for the Middle District of Tennessee, Nashville Division.
 
 
 2
 No Trustee was appointed for the Debtor. The Referee in Bankruptcy permitted Winner to remain in possession of its assets and to operate its business of manufacturing boats. Creditors were enjoined from commencing or continuing suits against the debtor.
 
 
 3
 Shortly after commencement of the proceeding Winner filed a petition in the Bankruptcy Court against appellant, H. A. Caesar & Co., Inc. (Caesar), seeking a turnover order requiring it to pay Winner credit balances alleged to be due and owing Winner under the provisions of a written factoring agreement which had been entered into between the parties on or about August 24, 1964. By the terms and provisions of this agreement Caesar agreed to and did purchase Winner's accounts receivable. In the agreement Winner warranted that all of its sales were bona fide valid sales, free and clear of all claims, offsets, counterclaims, liens and encumbrances. Caesar was to receive a commission of 1 3/4% of the net sales. The agreement was subsequently amended in certain particulars none of which is of importance here.
 
 
 4
 The agreement further provided that upon request, or at its own option, Caesar would remit to Winner the net amount of Winner's credit balance on Caesar's books, retaining so much of the credit balance as Caesar 'may deem necessary and commensurate with the volume and character of the business done to protect us against claims, returns and allowances and all of your indebtedness to us.'
 
 
 5
 It was Caesar's defense to the petition for a turnover order that it had the right, under the provisions of the written agreement, to retain the amount which it had withheld as a reserve to protect itself against such claims as above set forth.
 
 
 6
 The evidence presented at the hearing in the Bankruptcy Court was to the effect that prior to June, 1973 Caesar had remitted to Winner at least 97% of the invoice price of accounts receivable purchased from Winner. The 3% withheld included Caesar's commission and the discount of the face value of accounts receivable to reflect future maturity dates.
 
 
 7
 In June, 1973, Caesar learned that Winner's chief executive officer had been replaced with an officer of a local bank; that one of its engineers had been dismissed; and that there was a possible major defect in the grillage of Winner's boats. Caesar began withholding an additional 10% as a reserve. The additional reserve was increased to 25% in September, 1973, allegedly because of information which it had received concerning Winner's financial condition. Subsequently Caesar purchased approximately $90,000 of accounts receivable from Winner, for which no remittance was made. The $90,000 of accounts receivable was held by Caesar as a reserve to protect itself against chargebacks on previous purchases of $900,000 of accounts receivable.
 
 
 8
 The Bankruptcy Judge summarily determined the issues on the turnover petition on March 26, 1974, and held that under controlling New York law Caesar was required to exercise its withholding rights in good faith. He held that Caesar had not withheld amounts beyond the 3% commission and discount plus 10% reserve, in good faith. He ordered Caesar to pay all monies held by it, less 13%, to the debtor in possession, subject to an accounting; and further ordered that all further claims and chargebacks be submitted to him for approval, and until they were approved they could not be set off against the amount owing to Winner.
 
 
 9
 On April 5, 1974 the Bankruptcy Judge denied Caesar's request for a stay of his March 26th order, but granted an extension of time to April 25, 1974 to appeal the order to the District Court. On April 12, 1974 Caesar filed a notice of appeal to the District Court from the denial of the stay and also applied to the District Court for a stay. The District Court on the same day, denied the stay and later entered a formal order to that effect.
 
 
 10
 On April 17, 1974 the Bankruptcy Judge ordered Caesar to pay Winner $190,000 by April 22, 1974, allowing it to retain $130,000 as a reserve. At a hearing on April 17th the Bankruptcy Judge ruled that before Caesar could set off against the amount due Winner the sum of $140,000 in alleged warranty claims, Caesar would have to present said claims to the Judge for approval.
 
 
 11
 On April 22, 1974 Caesar filed notices of appeal to the District Court from the Bankruptcy Judge's orders of March 26th and April 17, 1974.
 
 
 12
 On April 25, 1974 the Bankruptcy Judge certified facts to the District Court, indicating the contempt of Caesar for failing to obey his March 26th and April 17th orders. On April 26 the District Court issued a notice of hearing set for May 2, 1974, on the certificate of facts.
 
 
 13
 On April 30, 1974 the Bankruptcy Judge confirmed the debtor's plan of arrangement. The arrangement proceeding had been in the Bankruptcy Court only since December 4, 1973.
 
 
 14
 At the hearing on May 2, 1974 the District Court considered scheduling a hearing on the merits of the appeals from the Bankruptcy Judge to the District Court, and Caesar's failure to comply with the Bankruptcy Judge's orders. Caesar informed the Court that the earliest it could be ready for a hearing on the merits of the appeals would be May 29, 1974. The Court indicated its displeasure at the delay and stated that a hearing would be held on May 8, unless Caesar filed a surety bond, in which event the hearing would be set for May 29, 1974.
 
 
 15
 The District Judge then turned to the matter Caesar's contempt, and indicated that he would decide the contempt matter before May 8th, and probably by May 6th. Caesar filed the surety bond for $200,000 on May 7, 1974.
 
 
 16
 On May 6, 1974 the District Judge entered an order adjudging Caesar in contempt of the Bankruptcy Judge's orders, imposing a $5,000-fine, payable to the debtor, for Caesar's past contempt, and imposed another fine of $1,000 per day, beginning May 10, 1974, until Caesar complied with the Bankruptcy Judge's order to pay the debtor in possession $190,000. The order also imposed a third fine of $100 per day, beginning after Caesar paid the aforementioned $190,000, until Caesar complied with the Bankruptcy Judge's order by filing an accounting. All of these fines were payable to the debtor.
 
 
 17
 Caesar filed a petition in mandamus in this Court to compel the Bankruptcy Judge and the District Judge to stay the March 26th and April 17th turnover orders. On May 8, 1974 Caesar applied to this Court for a stay of the District Judge's May 6th contempt order. The stay was granted on May 10th, and remained in effect until July 2, 1974, when Caesar's petition for mandamus was denied.
 
 
 18
 In the District Judge's memorandum accompanying his May 6th contempt order, he indicated that the Bankruptcy Judge's turnover orders had become final because Caesar had not filed a petition for review, required by § 39(c) of the Bankruptcy Act, 11 U.S.C. § 67(c). Caesar had filed timely notices of appeal under Rule 801 of the Bankruptcy Rules adopted by the Supreme Court. However, the new Bankruptcy Rules did not apply to Chapter XI proceedings until July 1, 1974. On May 8, 1974 the District Court, without a hearing, granted Winner's motions to dismiss Caesar's appeals.
 
 
 19
 On August 7, 1974, after a hearing on Winner's motion, the District Court entered an order directing the Clerk to issue execution for $94,000, of which $5,000 was for Caesar's past contempt as set out in the May 6th order, and $89,000 was for non-compliance with the May 6th order for the 89 days from May 10 through August 6, 1974.
 
 
 20
 Caesar has appealed to this Court from the three orders of the District Court entered on May 6th, May 8th, and August 7, 1974. The May 6th order adjudged Caesar in contempt for failing to comply with turnover orders of the Bankruptcy Judge, and imposed the three fines hereinbefore stated; the May 8th order dismissed Caesar's appeals from the turnover orders and from an order denying a stay of the turnover orders; and the August 7th order directed the Clerk to issue execution against Caesar for $94,000, which was the District Court's computation of contempt fines accumulated through August 6, 1974.
 
 
 21
 We consider first the question whether the District Court erred in granting, without a hearing, Winner's motions to dismiss Caesar's appeals from the turnover orders of the Bankruptcy Judge. The ground for dismissal was that Caesar should have filed petitions for review under § 39(c) of the Bankruptcy Act, 11 U.S.C. § 67(c), instead of notices of appeal. However, if the notices of appeal are treated as petitions for review they did substantially comply with § 39(c), and they were timely filed as provided in that section.
 
 
 22
 Section 39(c) also provides that a petition for review 'shall set forth the order complained of and the alleged errors in respect thereto.' Caesar followed Rule 801 and Form 28 of the new Bankruptcy Rules and Forms. The notices of appeal describe the orders but do not set forth the alleged errors in the orders. Rule 806 of the new Rules provides that the appellant shall file a statement which includes the issues which he intends to present on appeal with the Bankruptcy Judge, and shall serve said statement on the appellee. Caesar filed the statement required by Rule 806 on May 3, 1974. This is substantially the same as setting forth the errors as required by § 39(c).
 
 
 23
 Rule 806 provides that said statement of issues shall be filed within ten days of the filing of the notice of appeal. The docket entries of the Bankruptcy Court reflect that the notices of appeal were filed on April 22nd, and the statement was filed on May 3, 1974. The two notices of appeal are dated April 23, 1974. Caesar disputes the accuracy of the April 22d docket entry, claiming that the notices of appeal from the turnover orders were actually filed on April 23d, and Caesar has submitted an affidavit of its counsel to that effect.
 
 
 24
 Rule 801 provides that failure to take any step other than the timely filing of the notice of appeal does not affect the validity of the appeal.
 
 
 25
 It is clear that Caesar attempted to comply with the new Bankruptcy Rules in appealing to the District Court, and that under any state of the facts it did comply substantially with those rules.
 
 
 26
 In the course of the hearing held on January 30, 1974 the Bankruptcy Judge twice indicated that he believed the new Bankruptcy Rules were in effect or were applicable to Chapter XI proceedings.[1]
 
 
 27
 If Caesar had styled its notices of appeal as petitions for review, supported by the statement of issues, there can be no question but that this would have been substantial compliance with § 39(c). We have therefore a mere misnomer. The notices of appeal should have been treated by the District Court as petitions for review. The fact that the notices of appeal did not set out the alleged errors is immaterial as this was disclosed in the statement of issues. The misnomer did not affect Winner's substantial rights nor mislead it in any way.
 
 
 28
 Section 39(c) of the Bankruptcy Act was amended in 1960 to provide that an order of a Referee, now a Bankruptcy Judge, becomes final unless a petition for review is filed within ten days of the entry of the order, or within such extended time as the Court may allow on petition for extension filed within the ten-day period.
 
 
 29
 The purpose of the bill (was) to fix a definite period of time within which an application for review must be filed. (S.Rep.No.1689, 86th Cong., 2d Sess.; 2 1960 U.S.Code Cong. & Admin.News, at 3194--3195).
 
 
 30
 Since the amendment Courts have insisted on strict compliance with the time limitations in § 39(c) of the Bankruptcy Act. In the Matter of Paul E. Enyart, 509 F.2d 1058 (6th Cir. 1975); In Re Charmar Investment Co., 475 F.2d 560, 564 (6th Cir. 1973), cert. denied, 414 U.S. 823, 94 S.Ct. 123, 38 L.Ed.2d 56.
 
 
 31
 The amendment, however, was not intended to and did not militate against the rule which recognizes that 'the scope of the court review is not necessarily fixed by the petition, nor confined to issues presented before the referee.' Rosehedge Corp. v. Sterett, 274 F.2d 786, 790 (9th Cir. 1960).
 
 
 32
 The statement of issues, filed on May 3, 1974, indicates the questions to be decided by the District Judge. It could serve as the alleged errors required by § 39(c). The District Judge could even permit an amendment of the statement if it becomes necessary.
 
 
 33
 In our opinion the District Court erred in granting the motion of Winner to dismiss Caesar's appeals. Since Caesar filed a $200,000 surety bond, the District Court should have granted a stay.
 
 
 34
 The contempt orders of the District Court were necessarily based upon the validity of the turnover orders of the Bankruptcy Judge. These orders had not become final because appeals had been prosecuted therefrom to the District Court and a supersedeas bond had been filed. We have held that these appeals were improperly dismissed.
 
 
 35
 The contempt orders were invalid for other reasons, which we will detail.
 
 
 36
 The District Court's May 6th order imposed a $5,000-fine, payable to Winner, for the past contempt of the March 26th and April 17, 1974 orders. Ordinarily such a fine must not exceed the actual damage to the complainant caused by violation of the decree plus the complainant's reasonable expenses in presenting the contempt to the Court. Clark v. Boynton, 362 F.2d 992, 998 (5th Cir. 1966); Parker v. United States, 153 F.2d 66 (1st Cir. 1946).
 
 
 37
 In United States v. United Mine Workers, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947), it was held:
 
 
 38
 Such fine must of course be based upon evidence of complainant's actual loss . . ..
 
 
 39
 There is no evidence in the record of damage to Winner caused by Caesar's failure to comply with the Bankruptcy Judge's orders. The $5,000 fine did not purport to be, and is not, a reasonable amount for presenting this contempt to the Court.
 
 
 40
 The District Court also ordered that the $1,000 per day coercive fines be paid to Winner, and issued execution for the fines accumulated through August 6, 1974. It would make little sense to insist that fines for past contempt payable to the complainant be strictly based on evidence of actual damage, but to allow coercive fines, which are not calculated solely on the basis of the damage that violation of the becree would cause, to be paid to the private party. Contempt awards to private complainants are to be compensatory. Moskovitz, Contempt of Injunctions, Civil and Criminal, 43 Colum.L.Rev. 781, 806 (1943).
 
 
 41
 Coercive civil contempt fines in federal courts are ordinarily paid to the United States. See, e.g., Woods v. O'Brien, 78 F.Supp. 221 (D.Mass., 1948).
 
 
 42
 Sunbeam Corp. v. Golden Rule Appliance Co., 252 F.2d 467 (2d Cir. 1958), is authority to the contrary. In Sunbeam, the Second Circuit relied on United States v. United Mine Workers, supra. The position of the United States in United Mine Workers was that of Government and also complainant. We do not believe that United States v. United Mine Workers is authority for the proposition that coercive contempt fines are properly ordered paid to a private party.
 
 
 43
 Furthermore, under the provisions of the factoring agreement Caesar had discretion to withhold payment of credit balances as a reserve against claims. In our opinion this reserve could not be invaded by the debtor unless there was present not only an abuse of discretion but also had faith on the part of Caesar. The proof in this case does not establish either that Caesar abused its discretion or acted in bad faith. The finding of the Bankruptcy Court that the proof in respect to this issue was within the exclusive possession and control of Caesar is not supported by the evidence and is clearly erroneous.
 
 
 44
 In its brief Caesar states that since March 26th it has paid $250,000 of the credit balance to Winner, and that less than $30,000 in credit balances are now subject to dispute before the Bankruptcy Judge.
 
 
 45
 If the accounting has not already been made, the Bankruptcy Judge can complete it upon remand, and can determine whether any sums are due to either of the parties, and can render judgment accordingly.
 
 
 46
 In view of our disposition of these appeals, other errors complained of need not be considered.
 
 
 47
 The turnover orders and judgments rendered against Caesar and the contempt convictions are reversed and the cause is remanded to the District Court to dismiss the contempt charges and to complete the accounting between the parties and to render judgment accordingly.
 
 
 48
 Reversed and remanded.
 
 
 
 *
 The Honorable Robert M. Duncan, Judge, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 The District Judge, in one of the hearings, expressed similar views. He stated:
 But I want to give--I want to give everybody a chance to advise the Court of any authority under the new rules of procedure and bankruptcy. We are all new with those, because we have all used the old certification practice before, and we are having to feel our way along, but I'm under the impression that the same rules apply in the appeals from the Bankruptcy Court to the District Court that apply from the District Court to the Court of Appeals, and that's basis on which I'm going to approach this problem, unless you can show me something to the contrary. (A. 234)