**FALSTAFF BREWING CORPORATION, General Brewing Company S & P Company, Plaintiffs-Appellants,**

v.

**MILLER BREWING COMPANY, and Philip Morris, Incorporated, Defendants-Appellees.**

No. 81–4214.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1982.

Decided March 28, 1983.

Wallace, Circuit Judge, filed an opinion concurring in part and dissenting in part.

Theodore F. Schwartz, Clayton, Mo., Quentin L. Kopp, Kopp & DiFranco, San Francisco, Cal., for plaintiffs-appellants.

Daniel M. Lewis, Arnold & Porter, Washington, D.C., Stephen Bomse, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendants-appellees.

Before WALLACE, HUG, and ALARCON, Circuit Judges.

ALARCON, Circuit Judge.

The Falstaff Brewing Corporation (Falstaff) has appealed from the order of the district court finding Falstaff in contempt for inter alia failing to return documents as required by a protective discovery order and imposing costs payable to Miller Brewing Co. (Miller) for the expenses incurred by Miller in an attempt to locate the missing items. We are asked to decide whether the facts support a finding of civil or criminal contempt. We conclude that they do not and reverse the contempt order. We affirm the award of expenses, including attorney's fees, attributable to the vain quest for the lost files.

## I. ISSUES ON APPEAL

Falstaff raises the following issues on this appeal:

*One.* If the contempt order is criminal in nature, the district court violated Falstaff's right to due process by failing to accord Falstaff proper notice and a hearing as required by Rule 42 of the Federal Rules of Criminal Procedure. Further, we are told that the evidence fails to show that Falstaff was guilty of wilful disobedience of the district court's order.

*Two.* If the order is construed as civil in nature, it is invalid as a compensatory contempt because the fine was not made payable to Miller, and it cannot be coercive contempt because the record shows that compliance with the court's order to return the missing documents was impossible.

*Three.* The award of attorney's fees as part of the expenses incurred in searching for the missing files was excessive and unsupported by a record of the hours spent, the work performed, and the hourly rate ascribed to these services.

## II. PERTINENT FACTS

In December, 1977, Falstaff brought an action in the district court seeking relief from Miller and others for alleged violations of sections 1 and 2 of the Sherman

Act, and sections 2(c) and 7 of the Clayton Act. The parties stipulated to a protective order against disclosure of the materials produced for discovery. The order was entered on July 8, 1980. It provides in pertinent part as follows:

> With the consent of all parties, it is hereby ordered that whenever any party ... deems any document or other material ... confidential, the following procedure shall be employed:
>
> 1. Confidential matter shall be produced only to outside counsel....
>
> 2. Confidential matter produced or otherwise made available to such outside counsel or its contents shall not be used by anyone for any purpose ... other than the preparation and trial....
>
> 3. Outside counsel of any party who obtains any confidential matter from any other party shall not disclose it to anyone ... and shall protect it and its contents from all disclosure....
>
> \* \* \* \* \* \*
>
> 9. Within 90 days after final settlement ..., discovering counsel shall at the option of the party from which such matter was obtained return or destroy all copies, notes, tapes, other papers, and any other medium containing, summarizing, excerpting, or otherwise embodying any confidential matter or its contents so furnished....

In the early part of June, 1980, Falstaff discharged its legal counsel, the Gordon, Thomas, Honeywell, and Malanca firm (Malanca firm) and employed the Schwartz firm. On June 18, 1980, Falstaff voluntarily dismissed its claims. On July 1, 1980, approximately two weeks after the entry of the order dismissing the case with prejudice, Cary Adams, Miller's counsel, requested that Falstaff's current counsel, the Schwartz firm, return all confidential Miller documents within ninety days as required by the discovery order. The Schwartz firm failed to return 1,169 pages of original Miller documents; it sent Miller only duplicates of the documents.

On October 4, 1980, Miller filed a motion requesting that the court issue an order holding Falstaff in contempt for violating the protective discovery order. In support of the motion, Adams' submitted an affidavit in which he explained his attempts to recover the missing documents. Miller informed the court that the ninety-day period for compliance had expired on September 16, 1980. Falstaff had returned only duplicates of the original 1,169 pages of Miller documents produced for discovery purposes. Miller asserted that it was seeking the contempt order to ensure that Falstaff comply with the protective order and return the original documents.

Miller requested that the court order Falstaff to allow Miller to search all of Falstaff's files and to pay all of Miller's costs and expenses in conducting the search. Miller also asked the court to impose a fine of $5,000, to be refunded if the documents were returned within 30 days of the order. The purpose of the suggested fine was to "provide an incentive to plaintiffs to return the documents and to cooperate fully with defendants search for them."

Falstaff's former and present counsel filed affidavits in opposition to the motion. Each attorney denied that he was responsible for the loss of the documents. Falstaff also submitted the affidavit of the president of General Brewing Company. He asserted that after the Malanca firm had ceased to represent Falstaff, the firm shipped sealed cartons to Falstaff's office in Corte Madera, the contents of which were unknown to anyone at that office. According to the president of General Brewing Company, Falstaff's current counsel, Theodore Schwartz, inspected these cartons in Corte Madera and directed that all the cartons, except two be shipped to his office in St. Louis. Thereafter, Schwartz directed that the remaining cartons be shipped to his office in St. Louis.

After considering the various affidavits of counsel for both parties the district court issued the following order:

> Defendants are authorized to investigate at plaintiffs' expense the circumstances relating to the *present inability of plaintiffs and their past and current counsel to*

locate various confidential documents produced during this litigation by defendants under the protective order in effect in these cases (the "investigation"). Plaintiffs and their past and current counsel are instructed to cooperate fully with counsel for defendants in this investigation. Plaintiffs and their past and present counsel shall make themselves, their officers, employees, associates, paralegals, secretaries and others who may have knowledge about the missing documents available for interview or deposition by counsel for defendants. Plaintiffs and their past and current attorneys shall make all records and files related to this litigation [and to related pending actions] available for inspection by counsel for defendants. . . .

2. Plaintiffs shall, subject to further order of the court, pay all reasonable expenses and attorney's fees incurred by defendants in conducting the investigation. By October 31, 1980, plaintiffs shall pay to the clerk of this court the sum of $5,000, in cash or cashier's check which sum shall be deposited in interest-bearing account and shall be used to reimburse defendants for the expenses and fees incurred by defendants.

3. Within 30 days of the entry of this order, defendants shall report to this court the results of their investigation. Such report shall include an affidavit of expenses and attorney's fees.

4. At this time, the court does not find plaintiffs or their past or present counsel in contempt. However, this court reserves all questions of further relief for defendants and/or sanctions against plaintiffs and/or their past and current counsel pending the outcome of this investigation. (emphasis supplied).

Pursuant to this order, an investigation was conducted by Cary Adams and a paralegal during a four-day period between November 3–6, 1980. On December 12, 1980, Adams filed both the results of the investigation and a renewed motion for contempt.

By affidavit, Adams explained the procedure that he followed and the results of his intensive investigation. Adams and his assistant interviewed the employees and executives of both Falstaff and its attorneys, present and former, and inspected "all documents and files relating to this litigation and the document storage areas where missing documents were kept." Adams characterized all persons interviewed as cooperative. He "was able to interview . . . everyone identified as possibly having knowledge concerning the documents or their whereabouts," and he was given "ample opportunity to search all the offices and document storage areas identified as ever having housed the documents."

Adams determined that when former counsel withdrew, they shipped all of Falstaff's litigation files—including some of the confidential Miller documents—to Falstaff. Falstaff stated that it never opened the boxes sent by former counsel, and upon request, it shipped the boxes to the Schwartz firm via federal express. During the investigation, Adams determined that, after the Schwartz firm received the shipment, the labels were removed and the same boxes were shipped to Miller via federal express. Adams reported, and Falstaff's officers attested in their affidavits, that Falstaff's officers had no knowledge as to whether the boxes sent to them contained Miller documents. None of these boxes contained the missing Miller documents which were the subject of the court's coercive order.

Despite the investigation, Adams was unable to locate the missing documents or ascertain what had happened to them. He concluded that:

> The investigation was sufficiently thorough to satisfy me that substantial further efforts to locate the documents at this time would be futile. The memories of the people who had custody of the documents and their records regarding those documents are simply inadequate to determine what became of them. (emphasis added).

After the investigation, Miller renewed its motion for an order of contempt. In the memorandum filed in support of the renewed motion, Miller described the investigation as a "thorough search." Miller also acknowledged that the missing documents had not been recovered and that Miller's counsel was "unable to ascertain whether or how the documents were misplaced or destroyed." Thus, Miller believed that "further efforts to search for the missing documents would be *futile*." (Emphasis added). Nevertheless, Miller argued, the contempt order should issue because the investigation established that: (1) Falstaff's attorneys' negligent handling of the documents "makes it *impossible* to ascertain their present whereabouts"; and, (2) "these attorneys have acted in a way which concealed from [Miller] and the court their most blatant violation of the protective order." (emphasis added).

Miller's memorandum also delineated the various violations of the protective order. First, it was "now impossible" to determine what had happened to the documents because former counsel failed to maintain proper records of, and control over, the confidential materials produced by Miller. The documents, Miller asserted, may well have been misplaced before former counsel withdrew from the case and transferred their records to current counsel. Second, when former counsel withdrew from the case, it sent all of the confidential Miller documents in its possession to Falstaff's offices at Corte Madera, into the custody of Jack Miller, the president of General Brewing Corporation. Third, current counsel, who were twice notified and who received copies of the Malanca firm's records of the transfer to Corte Madera, negligently failed to take any steps to secure the return of the confidential documents or to protect them from disclosure to their clients. Thus, Miller's counsel concluded, both former and current counsel for Falstaff acted in a manner which failed to control the confidential documents as required by the protective order and they concealed from Miller and the district court the fact that the protective order had been violated.

Miller requested that Falstaff be held in contempt and fined $10,000 because the "gross negligence and lack of professional responsibility demonstrated by former and current counsel for [Falstaff] *result[ed] in the disappearance of many of the Miller documents, the present inability to locate them, and the repeated violations of this court's protective order.*" (emphasis added). Miller argued that although the missing documents could not be found, it was "obvious that the documents must be some place."

As an incentive to locate and return the documents should they reappear, Miller requested that the court impose a substantial fine to be paid "into the court" which could be *"refunded in part, in the discretion of the court,* should all of the documents be returned within 90 days." (emphasis added).

Miller maintained that, in light of the careless disregard of the order by Falstaff's attorneys and their conduct which concealed violations of that order, a fine of $10,000 and the "opprobrium associated with contempt would deter [such conduct in the] future." Falstaff's current counsel argued in opposition that the conclusion to be reached from the investigation was that neither Falstaff nor its current counsel ever had possession or custody of the missing documents. Thus, current counsel asserted, it was not logical to punish Falstaff in any manner for the acts of their former counsel, since former counsel's office had direct physical custody of the documents which had subsequently disappeared. Falstaff's present counsel urged the court to direct its order to Falstaff's former counsel and not to Falstaff or its current counsel. Former counsel, by affidavit, denied that they had violated the order in any respect.

The parties and Falstaff's past and present counsel, by stipulation, submitted the matter to the court on the basis of the pleadings, affidavits, and other materials filed with the court.

On January 28, 1981, the court entered its first order of contempt. The court noted

that under the terms of the protective order entered on July 7, 1978, counsel for plaintiffs were required to return all confidential documents upon Miller's request within 90 days after conclusion of the action. After reviewing the events leading to the investigation, the court explained that it had issued an order authorizing the investigation to determine the circumstances "relating to plaintiffs' *apparent inability to locate and return the confidential documents.*" (emphasis added). The court also stated:

> *The investigation did not lead to the discovery of any of the missing confidential documents. Nor did it disclose how they were lost or destroyed. Counsel are satisfied that any further investigation would be futile.* The investigation did disclose the following facts which appear to be substantially undisputed:
>
> 1. Plaintiffs' former counsel who represented them at the time of the production of these documents maintained no record of the documents received nor any system of control enabling them to track those documents.
>
> 2. When plaintiffs' former counsel withdrew from representation of plaintiffs, they delivered at least a portion of the confidential documents to their client in direct violation of paragraph 3 of the protective order which prohibits counsel from disclosing the confidential matter to anyone except under specific conditions not applicable here.
>
> 3. When plaintiffs' current counsel succeeded to the representation, they took no steps to protect the confidential documents from disclosure or loss or otherwise to assure compliance with the protective order. Notwithstanding the confusion that surrounds the disappearance of these documents, the facts recited above are established. Former and present counsel attempt to plead extenuating circumstances but there are none.

(emphasis added).

Prior to imposing sanctions, the court gave the following rationale for its order:

> The court considers this an extremely serious matter. Not only does it jeopardize the confidentiality of sensitive information . . . it calls into question the integrity of the discovery process conducted under protective orders. In thousands of actions throughout the federal court system, millions of documents have been and are being produced in reliance on the binding force of protective orders. Those orders have become a standard feature of most commercial litigation, obviating the need for costly and time-consuming proceedings on discovery objections. As a result, a tendency may have developed to take them for granted and to treat compliance with them cavalierly. *An appropriate sanction must therefore be imposed, "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."* National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976).

(emphasis added).

The court found Falstaff in contempt for violating its protective order because, through its attorneys, it had failed to: (1) return the documents; (2) maintain control of the documents to assure their return; and (3) prevent the release of those documents from the possession of the attorneys into the possession of the plaintiffs. The court ordered Falstaff to pay a $10,000 fine to the Clerk of the Court within 30 days of the entry of the order. The court also required that Falstaff and its attorneys return Miller's confidential documents if they were ever found. Falstaff was ordered to pay all costs and expenses, including actual attorneys' fees and charges for paralegal assistance, arising out of: (1) the initial attempts to secure return of the documents; (2) the investigation of the circumstances regarding the loss of the documents; and (3) the preparation and prosecution of Miller's motion and renewed motion for an order holding Falstaff in contempt. The $5,000 previously paid into the court by plaintiffs was to be applied against the amount owing to defendants.

Thereafter, pursuant to Fed.R.Civ.P. 59(e), Falstaff requested that the district court amend its first order of contempt on the grounds that it was "void to the extent it adjudges plaintiffs guilty of criminal contempt, and imposes upon them a $10,000.00 fine." The court's order, according to Falstaff, exacted both civil and criminal penalties for the contempt. The criminal penalty was the imposition of the $10,000.00 fine payable to the clerk of the court to deter others from treating cavalierly the protective orders of the court. Because the court found Falstaff guilty of criminal contempt, Falstaff argued that it was entitled to notice and a hearing pursuant to Rule 42(b) of the Federal Rules of Criminal Procedure; Falstaff had not received notice that it was accused of criminal contempt.

Falstaff's current counsel submitted an affidavit asserting that he had executed a stipulation waiving the hearing on defendant's motion for an order of contempt because he understood the proceeding to be one for civil, rather than criminal contempt, and he desired to avoid unnecessary expense to Falstaff. He also stated that, if he had notice that the motion would lead to the imposition of a penalty for criminal contempt, then he would not have waived the hearing on behalf of his client.

Falstaff's present counsel also filed affidavits stating that they had no knowledge concerning the present location of the missing confidential documents. Falstaff submitted the affidavits of its officers and employees who indicated that they had not seen any of the confidential documents and they did not have any knowledge as to the location of the missing documents.

In opposing the motion for an amended order, Miller argued that contempt penalties which are "criminal in nature" may be imposed without specifically being denominated as such. Since Falstaff had received notice of the matters constituting the contempt and the scope of the sanctions, Miller argued that Falstaff was not prejudiced by the lack of a specific denomination of criminal contempt.

On March 10, 1981, the court amended its order to provide:

> Plaintiff shall pay a fine of $10,000.00 to the clerk of this court within thirty days of the entry of the order. *If all of the defendants' missing confidential documents are returned . . . within ninety days . . . the court may, upon motion by plaintiff, consider a refund of such a portion of the fine as this court deems appropriate . . .* (emphasis added).

The amended order also clarified that the source of the court's contempt power was Fed.R.Civ.P. 37(b)(2)(D). This rule provides that if a party fails to obey an order to provide or permit discovery, the court may "make such orders in regard to the failure as are just, and among others . . ." an order of contempt. In all other respects, the court's amended order contained verbatim the language of the original order.

## III. ANALYSIS

### A. The Contempt Order

On appeal, Falstaff contends that it has been adjudicated guilty of criminal contempt without being afforded procedural due process. Falstaff argues that the confusion surrounding the nature of the contempt proceeding resulted in prejudice because Falstaff's counsel, believing the proceeding to be civil in nature, waived a hearing on the matter and failed to request a jury trial.[1]

---

1. In *United States v. Powers,* 629 F.2d 619, 626 (9th Cir.1980), this court warned that a contempt sanction could be invalidated if the district court's confusion as to the nature of the contempt proceeding resulted in prejudice to the contemnor. *Cf. In re Stewart,* 571 F.2d 958, 963 n. 2 (5th Cir.1978) (a reviewing court's inability to determine whether contempt proceeding is civil or criminal is, in itself, grounds for reversal). We affirmed the criminal contempt sanction in *Powers,* despite confusion as to the type of contempt proceeding conducted, because there was no prejudice shown. The contemnor had notice of the charge, an adequate opportunity to prepare a defense, and the defense had been presented.

We also recommended that an early determination be made as to the nature of contempt so that the proceedings could be conducted in accordance with appropriate rules, statutes,

### 1. *Determining the Nature of Contempt*

To distinguish civil from criminal contempt, the focus of the inquiry is often "not [upon] the fact of punishment but rather its character and purpose. *Shillitani v. United States,* 384 U.S. 364, 369, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966) (quoting *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911)). The test, as formulated by the *Shillitani* Court, is "what does the court primarily seek to accomplish by imposing [the sanction]?" 384 U.S. at 370, 86 S.Ct. at 1535.

The primary purpose of criminal contempt is to punish past defiance of a court's judicial authority, thereby vindicating the court. *See Shillitani,* 384 U.S. at 369, 86 S.Ct. at 1534; *Gompers,* 221 U.S. at 441, 31 S.Ct. at 498; *Accord United States v. Powers,* 629 F.2d 619, 627 (9th Cir.1980). The principal beneficiaries of such an order are the courts and the public interest. *Ager v. Jane C. Stormont Hospital & Training School for Nurses,* 622 F.2d 496, 500 (10th Cir.1980).[2]

■ Civil contempt is characterized by the court's desire to compel obedience to a court order, *Shillitani,* 384 U.S. at 370, 86 S.Ct. at 1535, or to compensate the contemnor's adversary for the injuries which result from the noncompliance. *Gompers,* 221 U.S. 418, 448–449, 31 S.Ct. 492, 500–501, 55 L.Ed. 797. Thus, there are two forms of civil contempt: compensatory and coercive.

*United States v. Asay,* 614 F.2d 655, 659 (9th Cir.1980). A contempt adjudication is plainly civil in nature when the sanction imposed is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public. *McCrone v. United States,* 307 U.S. 61, 64, 59 S.Ct. 685, 686, 83 L.Ed. 1108 (1939). A court's power to impose coercive civil contempt depends upon the ability of the contemnor to comply with the court's coercive order. *See Shillitani v. United States,* 384 U.S. at 371, 86 S.Ct. at 1536 (citing *Maggio v. Zeitz,* 333 U.S. 56, 76, 68 S.Ct. 401, 411, 92 L.Ed. 476 (1948).

■ While civil contempt may have an incidental effect of vindicating the court's authority and criminal contempt may permit an adversary to derive incidental benefit from the fact that the sanction tends to prevent a repetition of the disobedience, such incidental effects do not change the primary purpose of either type of contempt. *Gompers,* 221 U.S. at 443, 31 S.Ct. at 498. Where, however, a judgment of contempt contains an admixture of criminal and civil elements, "the criminal aspect of the order fixes its character for purposes of procedure on review." *Penfield Co. of California v. Securities & Exchange Commission,* 330 U.S. 585, 591, 67 S.Ct. 918, 921, 91 L.Ed. 1117 (1947).[3]

■ Similarly, where the *fine* imposed is part compensation and part punishment,

---

and due process requirements. *Id.* at 626. Standards of proof are affected: in civil, the contempt must be proven by clear and convincing evidence; in criminal, the proof of contempt must be beyond a reasonable doubt. *Id.* at n. 6. We also noted that Fed.R.Crim.P. 42(b) may require a trial by jury. A jury trial is required only if it is a "serious offense." *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974).

2. *See also In re Dinnan,* 625 F.2d 1146, 1149 (5th Cir.1980) (if purpose is to punish or vindicate authority of the court, proceeding is criminal); *Shakman v. Democratic Organization of Cook County,* 533 F.2d 344, 349 & n. 8 (7th Cir.), *cert. denied,* 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976) (if the purpose of the relief sought is to punish defiance of the court's au-

thority, then the relief sought is punitive whatever its form; if civil, fine must be compensatory); *Douglass v. First Nat'l Realty Corp.,* 543 F.2d 894, 898 (D.C.Cir.1976) (criminal contempt where court's objective was to punish through imposition of a $5,000 fine for failure to appear made payable "to the benefit of the Treasury of the United States").

3. In *United States v. United Mine Workers of America,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947) the Court stated that conduct can amount to both civil and criminal contempt and therefore the same acts may justify a court resorting to coercive and punitive measures. The Court also noted that where compensation is intended, the fine imposed is payable to the contemnor's adversary. *Id.* at 304, 67 S.Ct. at 701.

the criminal feature dominates and fixes its character for purpose of review. *Nye v. United States,* 313 U.S. 33, 42–43, 61 S.Ct. 810, 812–813, 85 L.Ed. 1172 (1941) (quoting *Union Tool Co. v. Wilson,* 259 U.S. 107, 110, 42 S.Ct. 427, 428, 66 L.Ed. 848 (1922). A contempt judgment is criminal when it requires the contemnor to pay to the government an unconditional fine. *See Gompers,* 221 U.S. at 449, 31 S.Ct. at 501; *Richmond Black Police Officer's Association v. Richmond,* 548 F.2d 123, 125 (4th Cir.1977); *Douglass v. First Nat'l Realty Corp.,* 543 F.2d 894, 898 (D.C.Cir.1976).

■ Applying these principles to the contempt order imposed upon Falstaff, we conclude that it is criminal in nature. The primary purpose of the order was to punish Falstaff for completed acts of disobedience by its attorneys. The court imposed the fine because Falstaff's former counsel disobeyed the protective order by failing to maintain control over the records, by sending the records to Falstaff, and by failing to return the documents within the required 90-day period. Falstaff could do nothing to change these past acts of disobedience by its attorneys. After the court-ordered investigation, Miller informed the court that further efforts to locate the documents would be futile and that the carelessness of Falstaff's former counsel may well have caused their loss. Consequently, the district court's order could not have had the effect of coercing Falstaff to comply with its protective order. *See Gompers,* 221 U.S. at 442, 31 S.Ct. at 498 ("[A coercive sanction] cannot undo or remedy what has been done nor afford any compensation....") The Court's original contempt order reflects this reality: it required, as Miller had requested in its renewed motion for contempt, that the unconditional fine be paid to the Clerk of the Court. This is an indication of pun-

ishment. *See Gompers,* 221 U.S. at 449, 31 S.Ct. at 501.

Similarly, the court's order could not have had the effect of remedying these past wrongs. If the court intended the fine to be remedial it would have imposed a fine payable to Miller, after evaluating the amount necessary to compensate the pecuniary injury. *Gompers,* 221 U.S. at 444, 31 S.Ct. at 499 ("The only possible remedial relief for such [past acts of] disobedience would have been to impose a fine for the use of complainant, measured ... by the pecuniary injury caused by the act of disobedience."); *see also United States v. United Mine Workers of America,* 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947) (where compensation is intended, the fine imposed is payable to the contemnor's adversary).

Another factor indicating that the contempt order is criminal in nature is Miller's request for relief. *See Shakman v. Democratic Organization of Cook County,* 533 F.2d 344, 348–49 (7th Cir.), *cert. denied,* 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976) (whether civil or criminal contempt depends on the nature of the relief requested) (citing *United States v. United Mine Workers,* 330 U.S. 258, 298–99, 67 S.Ct. 677, 698, 91 L.Ed. 884 (1947). In marked contrast to Miller's first motion for contempt,[4] Miller's renewed motion sought the sanction of contempt against Falstaff as punishment for disobedience to the protective order by Falstaff's counsel. Miller requested that the $10,000 fine be paid to the court for the "lack of professional responsibility and gross negligence" of Falstaff's current and former counsel which caused the "*disappearance* of the documents, the *present inability to locate them,* and the repeated violations of this court's protective order." (emphasis added). Had Miller requested

---

4. The focus of the first order sought by Miller was to insure that Falstaff comply with the protective order and return the documents. To that end, Miller requested that the Court allow it to search, at Falstaff's expense, all of Falstaff's files. Miller also sought to have a $5,000 fine imposed which would be refunded if the documents were returned within 30 days of the order. The purpose of the fine was to provide an incentive to return the documents and to assure Falstaff's cooperation in the search for the documents. The district court ordered the requested relief for the purpose of "determining the present inability of plaintiffs and their counsel to locate the documents."

that the fine be paid to it there would be "no doubt that remedial [relief] was sought." *Gompers,* 221 U.S. at 449, 31 S.Ct. at 501. Miller argued that there would be no incentive for litigants to take seriously their responsibilities under an order of the court unless litigants who were "guilty of such behavior" were subjected to a substantial fine, and the "opprobrium associated with being held in contempt." Miller also asserted that the unethical conduct of the attorneys could not be "condoned or left unpunished."

It is apparent that the purpose of the relief sought by Miller was to punish defiance of the court's order rather than to remedy or compensate the loss of records. The language of the court's contempt orders reflects this intent. The court explicitly stated that it was imposing the sanction of contempt to penalize Falstaff and to deter others from engaging in similar conduct.

Although the court's amended order added quasi-conditional language, this does not, in our view, alter its primary punitive nature. The amended order continued to require Falstaff to pay the fine to the Clerk of the Court rather than to Miller. Without taking any additional evidence as to Falstaff's ability to comply with a coercive order, the court amended the order in response to Falstaff's motion to strike the citation for contempt on the grounds that the contempt order, being criminal, violated due process. Rather than clearly stating the type of contempt imposed, the court indicated that it would consider refunding a portion of the fine if Falstaff returned the documents. This clause cannot be interpreted fairly as providing Falstaff with an unequivocal opportunity to purge itself of contempt.

A comparison of the amended order in the instant case with that in *Scott & Fetzer Co. v. Dile,* 643 F.2d 670, 675 (9th Cir.1981)

demonstrates that the amended order here did not change the nature of the contempt. There, in response to a motion to reconsider the order of contempt, the district court amended the order by striking the unconditional fine and by requiring a fine on the next violation. We held that this amendment evidenced the remedial purpose of the contempt order and therefore it was civil in nature. Here, despite the amendment, the fine remained unconditional—only the amount would vary if Falstaff complied and if the court in its discretion so ordered. This indicates that the court intended the amended contempt order to be punitive. If the court intended the fine to be compensatory—as in civil contempt—it would have ordered the fine payable to Miller. *Gompers,* 221 U.S. at 444, 31 S.Ct. at 499. If the court intended the fine to be coercive, the fine would have been conditional. Even if this partial refund could be viewed as a coercive fine, the unconditional nonrefundable fine payable to the Clerk of the Court is punitive and hence the order is criminal in nature. Where a fine contains an admixture of civil and criminal elements, the criminal aspect of the order fixes its character for purposes of review. *See Nye,* 313 U.S. at 42–43, 61 S.Ct. at 812–813.

More importantly, the order cannot be construed as coercive civil contempt because the uncontradicted evidence before the court at the time of the amendment established that, despite an exhaustive search, it was "impossible" and "futile" to find the missing documents. The court's orders also demonstrate that neither Falstaff nor its counsel—past or present—had the ability to obey the court's directive to return the missing documents.[5] Thus, because the documents could not be located, this potential partial refund was without factual foundation, and could not possibly serve as an incentive to obey.

---

5. In both contempt orders, the court stated that "the investigation did not lead to the discovery of the documents. *Nor did it disclose how they were lost or destroyed. Counsel are satisfied that any further investigation would be futile.*" (emphasis added). It is our view that the dis-

trict court's statements clearly evince its belief that the documents were lost; these statements clearly express its adoption of counsel's factual conclusion that further efforts to locate the documents would be futile.

▆▆▆ Conditioning an order of contempt on the performance of an impossible act, for the purpose of punishing a contemnor for its incapacity to perform the act, does not square with the Supreme Court's admonishment that "[e]very precaution should be taken that orders issue . . ., only after legal grounds are shown and only when it appears that obedience is within the power of the party being coerced by the order." *Maggio v. Zeitz,* 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed. 476 (1948).[6] The power to impose coercive sanctions to compel obedience to an order in a civil contempt is limited by the individual's ability to comply with the court's order. *Shillitani v. United States,* 384 U.S. at 371, 86 S.Ct. at 1536; *Maggio,* 333 U.S. at 72–73, & n. 6, 76, 68 S.Ct. at 409–410 & n. 6, 411. No matter how reprehensible the conduct is it does not "warrant issuance of an order which creates a duty impossible of performance, so that punishment can follow." *Maggio,* 333 U.S. at 64, 68 S.Ct. at 405. If the record establishes that there in fact is a present inability to comply with a production order, the " 'civil [contempt] inquiry is at an end' " insofar as the court may coerce compliance because obedience to the order is no longer within the contemnor's power. *Id.* at 74, 68 S.Ct. at 410 (quoting *In re Epstein,* 206 F. 568, 569 (E.D.Pa.1913) *aff'd sub nom. Epstein v. Steinfeld,* 210 F. 236 (3rd Cir.1914); *see also id.* at 72–73 & n. 6; *United States v. Meeks,* 642 F.2d 732 (5th Cir.1981) (coercive civil contempt order vacated because of contemnor's inability to comply; reviewing court stated that its order did not ban criminal contempt proceedings).

The record here contains uncontroverted evidence that Falstaff neither knew where the missing documents were located nor had them in its present or past possession. The district court determined that Falstaff's former counsel, who represented Falstaff at the time of the documents' production, failed to maintain both records of the documents received and a system of control en-

abling them to track those documents. This determination, in our opinion, fails to establish that Falstaff had control or possession of the missing documents at the time the contempt order issued, or that it had possession or control of the missing documents at an earlier time.

Rather, it supports the conclusion that, in fact, Falstaff's former counsel—not Falstaff—was custodian of the records. The protective order imposed that responsibility on counsel. Former counsel acknowledged past control over the documents. When former counsel withdrew, they shipped all of Falstaff's litigation files to Falstaff. Upon request, Falstaff shipped the boxes of files to new counsel who, in turn, shipped them to Miller. On these facts, Falstaff could not be compelled to produce documents over which it has had no control. *Cf. Brussel v. United States,* 396 U.S. 1229, 1230–31, 90 S.Ct. 2, 3, 24 L.Ed.2d 53 (1969) (rule permitting compelled production of corporate records by their custodian may be invoked only against a party who is in fact the custodian of the record in question). The parties and the court recognized that Falstaff's former counsel failed to maintain control over the records and that therefore the records could not be found. This is, in our view, a credible explanation as to the disposition of the documents: they were lost. Falstaff clearly did not have the present ability to return the documents. Under these circumstances, the fine could not provide Falstaff with an incentive to return the documents.

▆▆▆ More importantly, to construe the district court's order of contempt as civil in nature would be contrary to the Supreme Court's decision in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In *Hickman* the district court ordered the defendants to produce the work product of their counsel. When the defendants did not do so, the district court held them in civil contempt and ordered that

---

**6.** Prior to issuing a coercive civil contempt order, a court should weigh all the evidence properly before it determines whether or not there is actually a present ability to obey and whether failure to do so constitutes deliberate defiance or willful disobedience which a coercive sanction will break. *See Maggio,* 333 U.S. at 76, 68 S.Ct. at 411.

they be imprisoned until they complied. On appeal, the coercive civil contempt order was reversed and the Supreme Court affirmed the reversal. In holding that the district court erred, the Court stated that it would be an "anomalous result" to hold a party in contempt "for failure to produce that which was in the possession of their counsel..." *Id.* at 505, 67 S.Ct. at 390. Here, it is uncontroverted that Falstaff neither presently nor in the past had control over or possession of the missing documents. Thus, it was impossible for Falstaff to purge itself of contempt by returning documents which were in the sole possession of its counsel.[7] Consequently, the district court's order of contempt simply cannot be sustained as a coercive civil contempt order. Rather, we conclude that the order is criminal in nature because the primary purpose of the fine was to vindicate the court's authority.

### B. *Sufficiency of the Evidence*

We hold that there is insufficient evidence to sustain the order of criminal contempt.

If, as *Hickman* holds, it is an anomalous result to hold one in contempt for failure to produce that which is in counsel's possession, then it follows that it is an anomalous result to hold a party in contempt for violations of a protective order directed to and carried out by its counsel. The very terms of the protective order required that Falstaff not be able to exercise control over the confidential documents; hence, Falstaff's failure to do so cannot be viewed as willful disobedience to the court's protective order. In criminal contempt willful disobedience must be proved beyond a reasonable doubt. *United States v. Powers,* 629 F.2d 619, 626 n. 6, 627 (9th Cir. 1980); *United States v. Greyhound Corp.,*

508 F.2d 529, 531 (7th Cir.1974). Willfulness in this context means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order. This record amply demonstrates that Falstaff did not have the ability to violate the protective order because it was directed to counsel, and it was counsel, not Falstaff, who was the custodian of the confidential documents. There simply was no proof beyond a reasonable doubt that Falstaff wilfully disobeyed the court's protective order. The contempt order, being criminal in nature, must therefore be reversed. *Cf. Healey v. United States,* 186 F.2d 164, 171 (9th Cir.1950) (this court reversed a criminal contempt order because *inter alia* the contemnor never had control of the subject records and therefore could not be held responsible for their unavailability).

Finally, we note that the district court's reliance on *National Hockey League v. Metropolitan Hockey,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) in its orders of contempt does not alter our view. *National Hockey* neither involves nor refers to an exercise of contempt power pursuant to Fed.R.Civ.P. 37. Rather, *National Hockey* stands only for the principle that a court may dismiss an action pursuant to Rule 37, in accordance with due process, when the facts show that a plaintiff willfully or in bad faith fails to obey a discovery order.

Recognizing that dismissal is an extreme penalty, the Court reiterated its earlier holding that due process prohibits dismissal for noncompliance when it is established that failure to comply was due to inability rather than willfulness, bad faith, or any fault of the party. 427 U.S. at 640, 96 S.Ct. at 2779 (quoting *Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958)). This comports

---

7. Generally, impossibility is a complete defense to a charge of contempt. An exception exists in the criminal context where the impossibility is self-induced. *See, e.g., United States v. Bryan,* 339 U.S. 323, 330–31, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950). This court, in dicta, has asserted that self-induced inability is not a defense to a charge of compensatory civil con-

tempt. *United States v. Asay,* 614 F.2d 655, 660 (9th Cir.1980). It is clear, however, that inability—whether or not self induced—is a complete defense to a charge of coercive civil contempt. *United States v. Rylander,* 656 F.2d 1313, 1317 n. 4 (9th Cir.1981), *cert. granted,* 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 464 (1982).

with the requirement that a party be given reasonable notice of a charge and an opportunity to be heard in defense before punishment is imposed. *Accord Groppi v. Leslie,* 404 U.S. 496, 502, 92 S.Ct. 582, 586, 30 L.Ed.2d 632 (1972) (quoting *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948)). It is also consistent with the rule that a *willful* disobedience of a court order is required before issuing an order for criminal contempt which seeks to deter and to penalize. *See Chapman v. Pacific Telephone & Telegraph Co.,* 613 F.2d 193, 195 (9th Cir.1979). There is nothing in *National Hockey* to indicate that Rule 37 has changed the law relative to civil and criminal contempt simply because the Court, in reaffirming the principle that due process

limits the sanction power set forth in Rule 37(b), has recognized the deterrent and punitive aspects of Rule 37(b) sanctions.

■■■ The court's imposition and selection of sanctions pursuant to Rule 37(b) must be consistent with due process requirements.[8] This notion is similar to the view that due process is a limitation on the court's contempt power. Thus, due process is a limitation upon the application of sanctions—whether imposed pursuant to the court's inherent contempt power or to the Rule 37(b) contempt power.[9] As with contempt, Rule 37(b) sanctions may serve either remedial and compensatory purposes or punitive and deterrent purposes.[10] Rule

**8.** In *United States v. Sumitomo Marine & Fire Insurance Co.,* 617 F.2d 1365, 1369 (9th Cir. 1980), this court recognized that the use of Rule 37 sanctions must be tempered by due process. We held that it is improper to dismiss a claim or to exclude evidence if the failure to comply with a discovery order is due to circumstances beyond the disobedient party's control. *Accord Emerick v. Fenick Industries, Inc.,* 539 F.2d 1379, 1381 (5th Cir.1976) (when disobedient party shows that recalcitrance is based on factors beyond party's control, reviewing court is justified in terming the Rule 37 dismissal an abuse of discretion); *Dorsey v. Academy Moving & Storage Inc.,* 423 F.2d 858 (5th Cir.1970) (preclusion of evidence pursuant to Rule 37 vacated because plaintiff made good faith efforts to comply). *See also Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494, 505 (4th Cir.1977), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978) (default judgment pursuant to Rule 37 reversed because witness testified he produced everything in his possession and therefore was unable to comply with discovery order); *Bon Air Hotel, Inc. v. Time, Inc.,* 376 F.2d 118, 121–22 (5th Cir.1967), *cert. denied,* 393 U.S. 859, 89 S.Ct. 131, 21 L.Ed.2d 127 (1968) (court vacated dismissal pursuant to Rule 37 for failure to produce a witness for purposes of deposing an officer of plaintiff, a bankrupt corporation, because of plaintiff's good faith efforts to locate); *Read v. Ulmer,* 308 F.2d 915 (5th Cir.1962) (Rule 37 sanction reversed because such penalties are not to be imposed for failure to comply in the absence of ability to produce; the relationship of insurer and insured is not such as to create an absolute duty of the former to produce an article in the possession and control of the latter which it refuses to make available for production; it does not hold articles in the possession and under the control of insured). *General Houses, Inc. v. Marloch Manufacturing Corp.,* 239 F.2d

510 (2d Cir.1956) (dismissal for willful failure to appear pursuant to Rule 37 reversed because uncontradicted evidence established that no officers or former officers of corporation were within plaintiff's control; under such circumstances, it would be impossible to comply with order and therefore *a fortiori* improper to dismiss the action).

**9.** Another similarity between Rule 37 and contempt is the requirement of due process. As the due process requirements are more stringent on criminal contempt than in civil contempt, *see Powers,* 629 F.2d at 625–29, so, too, are the due process concerns greater when harsh sanctions are imposed pursuant to Rule 37. *Roadway Express,* 447 U.S. at 767 n. 14, 100 S.Ct. at 2464 n. 14. There, the Court explained that the magnitude of due process concerns varied with the severity of the Rule 37 sanction:

Some due process implications of sanctions for misconduct of litigation were discussed in *Societe Internationale v. Rogers,* 357 U.S. 197, 208–212 [78 S.Ct. 1087, 1093–1095, 2 L.Ed.2d 1255] (1958), which reversed the dismissal of an action for failure to comply with a pretrial discovery order. The due process concerns posed by outright dismissal are plainly greater than those presented by assessing counsel fees against lawyers. (citation). Moreover, *Societe Internationale,* did not involve willful misconduct or bad faith.

Thus, the sanction scheme pursuant to Rule 37 parallels the court's contempt power and due process is a limitation on both powers.

**10.** As in civil contempt, discovery sanctions may be imposed to compel compliance with an order or to compensate the opposite party. *See, e.g., Dorsey v. Academy Moving & Storage, Inc.,* 423 F.2d 858, 860 (5th Cir.1970) (the

37 does not, in our view, change traditional concepts of the due process limitations on the exercise of contempt power.

 In sum, we hold that the contempt order, being criminal in nature, must be reversed as an abuse of discretion because the protective order was directed to Falstaff's counsel and there is insufficient evidence to support a finding that Falstaff willfully disobeyed the order.

## IV. ATTORNEY'S FEES

We reach a different conclusion with respect to the attorney's fees issue. Falstaff contends that the district court's award of attorney's fees in the amount of $27,184.68 is an abuse of discretion. Falstaff challenges both the entitlement to, and the reasonableness of, the attorney's fees award. Each contention lacks merit.

Fed.R.Civ.P. 37(b) empowers the courts to impose sanctions for failures to obey discovery orders. In addition to a broad range of sanctions, including contempt, Fed.R. Civ.P. 37(b)(2) authorizes the court to impose a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order.

 The imposition and selection of particular sanctions are matters left to the sound discretion of the trial court. *David v. Hooker, Ltd.,* 560 F.2d 412, 418 (9th Cir. 1977). The exercise of this discretion will not be found to be an abuse unless the reviewing court has been left with a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached. *United States v. Sumitomo Marine & Fire Insurance Co. Ltd.,* 617 F.2d 1365 (9th Cir.1980).

 Falstaff does not, and cannot contend that its counsel complied with the terms of the protective order. This failure to obey the protective discovery order exposed counsel *and Falstaff* to liability under Rule 37(b)(2) for the resulting costs and attorney's fees. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980). Yet, Falstaff failed to avail itself of the opportunity to challenge the reasonableness of the attorney's fees award.[11] When Miller submitted its claim for fees, Falstaff never objected to the reasonableness of the amount. Falstaff first objected to the amount of fees after the award was granted. The court then scheduled a hearing to consider Falstaff's objections. Falstaff, however, withdrew its objection and instituted this appeal.

 The party against whom an award of expenses is sought has the burden of showing the special circumstances that make his or her failure to comply substantially justified. *David v. Hooker, Ltd.,* 560 F.2d at 419. Since Falstaff chose to waive the procedures by which it could show such special circumstances, it has failed to preserve the issue for appeal. The district court's award of attorney's fees is affirmed.

The judgment of the district court is REVERSED in part and AFFIRMED in part.

WALLACE, Circuit Judge, concurring in part and dissenting in part:

I concur in the portion of the majority opinion affirming the award of expenses, including attorneys' fees, incurred by Miller in its efforts to recover its missing confidential documents. I must dissent, however, from the portion of the majority's

---

rule is designed to empower the court to compel production of evidence by the imposition of reasonable sanctions); *Haney v. Woodward & Lothrop, Inc.,* 330 F.2d 940, 946 (4th Cir.1964) (required disobedient party to cover the costs incurred). Similarly, as in criminal contempt, discovery sanctions may be imposed to deter and to penalize. *See, e.g., Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980); *National Hockey*

*League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976).

**11.** Notice and an opportunity for a hearing on the record are procedures due before the sanction of attorney's fees is imposed pursuant to Fed.R.Civ.P. 37. *See Roadway Express v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1979).

opinion which holds that the contempt order is criminal and reverses the district judge's order as an abuse of discretion.

The primary difference between civil and criminal contempt is the intended effect of the court's order. *United States v. Powers,* 629 F.2d 619, 626–27 (9th Cir.1980); *In re Dinnan,* 625 F.2d 1146, 1149 (5th Cir.1980) (per curiam); *Douglass v. First National Realty Corp.,* 543 F.2d 894, 897–98 (D.C.Cir. 1976). A civil contempt order is conditional, designed to enforce the court's decree or to compensate for losses caused by noncompliance; criminal contempt is unconditional, designed to punish, vindicate the court's authority, and deter others. *Shillitani v. United States,* 384 U.S. 364, 368–70, 86 S.Ct. 1531, 1534–35, 16 L.Ed.2d 622 (1966); *United States v. United Mine Workers of America,* 330 U.S. 258, 302–04, 67 S.Ct. 677, 700–01, 91 L.Ed. 884 (1947); *United States v. Asay,* 614 F.2d 655, 659 (9th Cir.1980).

The extensive analysis by the majority of the contempt order, its amendment, and the parties' arguments is ample proof of the difficulty of the case before us and the closeness of the question which divides us. Giving the deference due the district court, *see, e.g., Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 673 F.2d 53, 57 (2d Cir. 1982), my interpretation differs from that of the majority and I conclude that the district court's amended order of contempt is conditional and coercive.

The order provides that "[i]f all of defendant's missing confidential documents are returned by plaintiffs or their attorneys to defendants within 90 days of the date of this Order, the Court may, upon motion by plaintiffs, consider a refund of such portion of the fine as the Court deems appropriate." The language employed by the district judge provides flexibility in the event that some, but not all of the missing documents are returned. Notably, the language of the amended contempt order does not preclude the district judge from refunding the entire fine to Falstaff in the event of full compliance. Furthermore, any portion of the fine not refunded by the court upon full compliance, might well be employed to compensate Miller for damages incurred as a result of Falstaff's failure to comply with the protective order. Miller expressly reserved the right to seek compensation.

Miller's original and renewed motions for contempt also support the conclusion that the amended order is coercive. Miller urged the court to provide for refund of part of the fine at the discretion of the court "[a]s an incentive to have [the] documents returned . . . ." Falstaff, in its memorandum in support of the motion to amend the contempt order, observed that "[i]n essence, the Court was constructing an order seeking to 'coerce' compliance with a court order upon pain of contempt for the failure to comply." The amended order of contempt provided Falstaff with an opportunity to purge its failure to comply with the protective order and, therefore, is civil. *See Douglass v. First National Realty Corp., supra,* 543 F.2d at 898 (holding that a contempt order was criminal, in part because there was no opportunity for the defendant to purge himself and avoid paying the fine); *United States v. Spectro Foods Corp.,* 544 F.2d 1175, 1182 (3d Cir.1976) ("The fact that a defendant can purge himself of the contempt and avoid the sanctions indicates that the purpose is coercive and the contempt order is civil.") (footnote omitted).

The majority points to the fact that the district court required Falstaff to pay the fine to the court, rather than to Miller, as an indication that the fine constituted a criminal contempt sanction. Maj. op. at 779–780. The majority, in my view, fails to distinguish adequately the two different functions of civil contempt and consequently confuses the issue whether a sanction is coercive or compensatory with whether a sanction is civil or criminal. When the court intends to impose a coercive civil sanction, it is proper for the fine to be made payable to the court rather than a private party. *See, e.g., Doyle v. London*

Guarantee & Accident Co., 204 U.S. 599, 605, 27 S.Ct. 313, 314, 51 L.Ed. 641 (1907) (holding that contempt order was civil and not subject to interlocutory review) ("while it is true that the fine imposed is not made payable to the opposite party, compliance with the order relieves from payment . . . ."); *In re Dinnan, supra,* 625 F.2d at 1149 ("A coercive, nonpunitive fine payable to the clerk of the court is an appropriate tool in civil contempt cases.") (collected cases); *Raymor Ballroom Co. v. Buck,* 110 F.2d 207, 210 (1st Cir.1940) (civil contempt order to pay fine to clerk of court who was directed to pay net amount of fine to judgment creditor affirmed). *See generally United States v. United Mine Workers of America, supra,* 330 U.S. at 304, 67 S.Ct. at 701. Indeed, paying the fine into the court, rather than turning over funds to a private party, provides an added safeguard to the contemnor who subsequently purges himself of liability for all or part of the fine. *See generally Union of Professional Airmen v. Alaska Aeronautical Industries, Inc.,* 625 F.2d 881, 882 & n. 1 (9th Cir.1980) (dismissing appeal for lack of jurisdiction) (civil contemnor paid damages and attorneys' fees into the court and requested the court to retain the money pending appeal of the contempt order); *Winner Corp. v. H.A. Caesar & Co.,* 511 F.2d 1010, 1015 (6th Cir. 1975) (dicta) (coercive civil contempt fine, as contrasted with a compensatory civil contempt award, should not be paid to a private party). Thus, the majority improperly fails to defer to the discretion given district judges in fashioning sanctions. *See Perfect Fit Industries, Inc. v. Acme Quilting Co., supra,* 673 F.2d at 57 (district court has broad discretion to design a coercive contempt remedy that will bring about compliance); *United States v. Westinghouse Electric Corp.,* 648 F.2d 642, 651 (9th Cir.1981) (choice of discovery sanctions left to discretion of district court).

If the fine imposed on Falstaff contained elements of both criminal and civil contempt, I would agree that it should be viewed as criminal contempt for purposes of our review. *See Nye v. United States,* 313 U.S. 33, 42–43, 61 S.Ct. 810, 812–813, 85 L.Ed. 1172 (1941). Here, however, the fine is coercive and conditional; it contains no criminal aspects. Thus, it properly is reviewed as a civil contempt sanction. *See Penfield Co. v. SEC,* 330 U.S. 585, 591, 67 S.Ct. 918, 921, 91 L.Ed. 1117 (1947). As pointed out by the majority, civil contempt may have an incidental effect of vindicating the court's authority. Such an incidental effect does not change the character of the civil sanction into a criminal sanction. Maj. op. at 778–779. *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 443, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911).

Two other points raised by the majority in conjunction with whether the amended order is one for criminal or for civil contempt deserve mention. First, the majority argues that *Scott & Fetzer Co. v. Dile,* 643 F.2d 670, 675 (9th Cir.1981) (*Dile*), shows that the contempt order is criminal even as amended. Maj. op. at 780. Contrary to the majority's interpretation, *Dile* supports a finding that the amended order is for civil contempt. In *Dile,* as here, the district court's amendment of the contempt order demonstrates that the court intended to impose a civil contempt sanction.

Second, the majority argues that *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), precludes the conclusion that the amended order is for civil contempt. Maj. op. at 781–782. The case does cause some difficulty. There, the Supreme Court affirmed the appeals court's reversal of a coercive civil contempt order against the defendants. As the majority emphasizes, the Supreme Court commented that it would be an "anomalous result" to hold a party in contempt "for failure to produce that which was in the possession of [its] counsel." 329 U.S. at 505, 67 S.Ct. at 390. The Court's comment, however, was made in determining which rule the party seeking discovery should have proceeded under and, thus, is dicta. Other cases support the proposition that a party is bound

by the acts of his lawyer-agent. *See, e.g., Link v. Wabash Railroad,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962).

Even assuming that the Court's comment is not dicta, *Hickman v. Taylor* does not necessarily preclude a finding that the district court properly entered a coercive civil contempt order against Falstaff. The district court's order can be read to include an implied finding that Falstaff itself could comply with the protective order. The district judge was faced with what appears to be a situation analogous to the shell game. Each of the three possible holders denied present possession. Yet there was no evidence that the missing records no longer existed. Falstaff thus became one of the three suspects. The record reveals that many of the documents released by Miller to Falstaff's counsel ended up in the custody of Falstaff's president for several months. Although the documents known to have been in Falstaff's possession were eventually returned to Miller, the record merely demonstrates that no one knows what happened to the remainder of the documents and that they too might have been sent to Falstaff. Further, the record shows that some of Miller's documents may have been shipped to one of Falstaff's breweries and that, despite assertions that any such records were kept in locked storage and were accessible only to Falstaff's outside counsel, records were actually accessible to Falstaff personnel.

I interpret the amended contempt order as including an implied finding that it was possible for Falstaff to comply with the protective order. Even if a district judge's factual finding is merely implied, we are bound by the clearly erroneous standard. *See Cedar Creek Oil & Gas Co. v. Fidelity Gas Co.,* 249 F.2d 277, 281 (9th Cir.1957), *cert. denied,* 356 U.S. 932, 78 S.Ct. 775, 2 L.Ed.2d 763 (1958).

The district judge's finding that it was possible for Falstaff to comply with the protective order is not clearly erroneous. A fair reading of the Adams affidavits is that further efforts by Miller to locate the documents would be futile. Falstaff, however, might well be able to locate the documents. Indeed, the record shows that prior searches by Falstaff's counsel were somewhat less than thorough. Notably, Miller's investigation did not reveal the fate of the missing documents, implying that the documents may still be in existence. The district judge was well within his bounds in imposing the fine as an incentive for Falstaff and its counsel to make greater efforts to find and return Miller's documents.

I would also hold that Falstaff received sufficient due process. *See United States v. Powers, supra,* 629 F.2d at 624; *United States v. Hawkins,* 501 F.2d 1029, 1031 (9th Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974); *cf. United States v. Westinghouse Electric Corp., supra,* 648 F.2d at 651; *United States v. Asay, supra,* 614 F.2d at 659. Miller's motions for contempt and imposition of sanctions gave Falstaff adequate notice. Falstaff waived a hearing and never requested any additional time to prepare a defense. *See United States v. Powers, supra,* 629 F.2d at 628.

I would affirm.